Filed 4/22/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S200612 |
| v. | ) | |
| | ) | Ct.App. 5 F061562 |
| JANE NUCKLES, | ) | |
| | ) | Kings County |
| Defendant and Appellant. | ) | Super. Ct. No. 09CM3022 |
| _____ | ) | |

An accessory is a person "who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or *punishment*, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof . . . ." (Pen. Code,[1] § 32, italics added.) Here, we conclude that a person who intentionally aids a parolee in absconding from parole supervision qualifies as an accessory. The judgment of the Court of Appeal, reaching the same conclusion, is affirmed.

## I. BACKGROUND

Adam Gray was convicted of dissuading a witness from testifying[2] and sentenced to state prison for two years. He was released in July 2008 and paroled

---

[1] Subsequent statutory references will be to the Penal Code.
[2] Section 136.1, subdivision (a)(1).

1

to Kern County. As a condition of his parole, he was not to leave that county without his parole officer's permission. In July 2009, Gray's parole officer determined Gray had absconded from parole and a warrant was issued for his arrest.

Defendant, Jane Nuckles, was close with Gray and considered him her son-in-law because Gray and defendant's daughter had a child together. Defendant and her boyfriend, John Amaral, lived in adjacent Kings County. In August 2009, at defendant's invitation, Gray and his new girlfriend, Brea Hays, moved into defendant's house. Defendant and Amaral shared the single bedroom. Gray and Hays slept on the living room floor. Amaral testified that, later in the month, Gray was featured as a wanted fugitive in the "Crime Stoppers" section of the local newspaper. Defendant, Gray, and Hays were happy with the notoriety and celebrated Gray's inclusion in the column. Amaral told defendant he worried that harboring Gray would result in defendant's own parole being revoked. Defendant dismissed the concern, saying she would "take a bullet" for Gray and told Amaral not to tell anyone about him. Amaral later overheard defendant, Gray, and Hays making contingency plans should police arrive at the house. Defendant told Gray and Hays to hide in the basement by going through a trap door hidden in the bedroom closet.

On September 3, 2009, Amaral called the Crime Stoppers hotline and reported that Gray was at his house. Police found Gray hiding in the garage. Hays was found in the bedroom climbing out of the trap door to the basement. The officers found several large duffel bags in the garage containing clothes, stereo equipment, pry bars, bolt cutters, and papers belonging to Gray and Hays. They also found a handgun, ammunition, cleaning kit, and pepper spray in the garage. Amaral told officers these items did not belong to him or defendant. Gray was found in violation of his parole and returned to state prison for six months.

2

Defendant testified and denied Gray was living with her. She claimed Gray only visited a few times in August 2009. Seeing the Crime Stoppers article, she confronted Gray, who admitted he had absconded from parole. She ordered Gray to immediately collect his belongings and leave. She denied telling Gray and Hays about the trap door in the bedroom.

After the jury convicted her of being an accessory, defendant admitted she had served a prior prison term.[3] Defendant was sentenced to state prison for four years, which consisted of the upper term of three years for being an accessory and a consecutive one-year term for her prison prior.

On appeal, defendant argued the act of assisting a parolee abscond from supervision did not satisfy the statutory definition of an accessory. The Court of Appeal disagreed and affirmed her conviction. We do likewise.

## II. DISCUSSION

Parties to crimes are either principals or accessories. (§ 30.) Principals are defined as "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . ." (§ 31; see also *People v. Calhoun* (2007) 40 Cal.4th 398, 402.) Under section 32, an accessory is one "who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof . . . ." "The crime of accessory consists of the following elements: (1) someone other than the accused, that is, a principal, must have

---

[3]     Sections 32, 667.5, subdivision (b).

committed a specific, completed felony; (2) the accused must have harbored, concealed, or aided the principal; (3) with knowledge that the principal committed the felony or has been charged or convicted of the felony; and (4) with the intent that the principal avoid or escape from arrest, trial, conviction, or *punishment*." (*People v. Plengsangtip* (2007) 148 Cal.App.4th 825, 836, italics added (*Plengsangtip*); see also *People v. Prado* (1977) 67 Cal.App.3d 267, 271.)

Defendant first argues she could not have violated section 32 for assisting an absconding parolee because being an accessory requires providing assistance to a principal after he has committed a felony and a parole violation may be based on a misdemeanor, infraction, or no crime at all. She further suggests that aiding an absconding parolee lacks a "logical, temporal, and facilitative nexus between the principal's engagement in the felony and the aid provided to him."

These arguments miss the mark. For purposes of section 32, the relevant felony here is Gray's conviction for dissuading a witness, not any conduct in violating his parole. Indeed, if defendant knowingly helped Gray violate his parole by assisting him in the commission of a new crime, she could be liable of aiding and abetting under section 31, not as an accessory under section 32. Section 971 abolished the common law distinction between accessories before the fact and principals and states that "all persons concerned in the commission of a crime . . . shall hereafter be prosecuted, tried and punished as principals. . . ." Section 32 applies not only to those who help felons avoid capture or conviction, but also to those who help them "avoid or escape from . . . punishment." Thus, if defendant intentionally helped Gray avoid some aspect of punishment for his felony conviction, there was a sufficient nexus between her aid and Gray's felony to bring her conduct within the ambit of section 32.

Defendant argues she did not help Gray avoid punishment for his conviction because his period of parole is not part of the punishment imposed for

4

that offense. She asserts that Gray served his prison sentence, and any "punishment" Gray might receive for violating his parole constitutes an "administrative sanction" different from, and in addition to, his punishment for the underlying felony. The People counter that parole supervision is a direct consequence of a felony conviction and constitutes punishment for the felony. Thus, they urge, to the extent defendant helped Gray abscond from parole supervision, she has helped him escape a portion of his punishment.

These competing arguments focus on the nature of parole and whether it constitutes part of the punishment for the underlying crime. It does. Defendant's argument to the contrary mistakenly equates *punishment* for an offense with the *sentence* imposed for that offense. As defendant observes, former section 33 made being an accessory a felony with an unspecified state prison term, which, under former section 18, meant imprisonment in the state prison for 16 months, two, or three years.[4] However, contrary to defendant's argument, nothing in the language of section 18 limits the concept of punishment solely to the prison term prescribed for the offense. Indeed, section 18 is silent about other aspects of a sentence, such as fines, that also amount to punishment. (See *People v. Souza* (2012) 54 Cal.4th 90, 143 ["It is well established that the imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions."].)

---

[4] The Criminal Justice Realignment Act of 2011 has subsequently modified the law to provide that certain felonies, including being an accessory, are subject to terms in county jail rather than state prison, and certain offenders are subject to community supervision rather than parole. (See §§ 33, 1170, subd. (h), 3000.08, subd. (b), see also Stats. 2011, ch. 15, §§ 232, 450, 469.) This act is not at issue here.

The concept of punishment is broader than the term of imprisonment. "The determinate sentencing law, which governs sentencing of adult offenders who have committed a crime for which a 'statute specifies three possible terms,' requires the trial court to choose a set term (Pen. Code, § 1170, subd. (b)) — a lower, middle, or upper term — from the adult tripartite sentencing scheme." (*In re Julian R.* (2009) 47 Cal.4th 487, 496.) "[U]nder the present law the prison 'term' is the actual time served in prison *before* release on parole, and the day of release on parole marks the *end* of the prison term. . . . [T]he period of parole is *not* part of a defendant's prison term, and the length of time an offender may remain on parole or may be incarcerated for a parole violation is measured by statutory provisions setting the maximum parole period for most offenses at three years and establishing the maximum period of confinement for a parole violation at one year." (*People v. Jefferson* (1999) 21 Cal.4th 86, 95-96; see §§ 3000, subd. (b)(1), 3057, subd. (a).) "It is apparent that a term of imprisonment and the onset of parole are distinct phases under the legislative scheme. [Citations.] . . . [T]he general objectives of sentencing include protecting society, punishing offenders, deterring future crimes, and treating with uniformity those committing the same types of offenses [citations], whereas the objective of parole is, through the provision of supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society." (*In re Roberts* (2005) 36 Cal.4th 575, 589-590 (*Roberts*).)

Although parole constitutes a distinct phase from the underlying prison sentence, a period of parole following a prison term has generally been acknowledged as a form of punishment. "[P]arolees are on the 'continuum' of state-imposed punishments." (*Samson v. California* (2006) 547 U.S. 843, 850 (*Samson*).) Further, parole is a form of punishment accruing directly from the underlying conviction. As the Attorney General observes, parole is a mandatory

6

component of any prison sentence. "A sentence resulting in imprisonment in the state prison . . . shall include a period of parole supervision or postrelease community supervision, unless waived . . . ." (§ 3000, subd. (a)(1).) Thus, a prison sentence "contemplates a period of parole, which in that respect is related to the sentence." (*Roberts, supra,* 36 Cal.4th at p. 590.) Being placed on parole is a direct consequence of a felony conviction and prison term. A defendant pleading guilty to a felony must be informed that a period of parole is a direct consequence of such plea. (*In re Moser* (1993) 6 Cal.4th 342, 351-352.) "A consequence is deemed to be 'direct' it if has ' " 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " ' [Citation.]" (*People v. Moore* (1998) 69 Cal.App.4th 626, 630; see also *People v. Aguirre* (2011) 199 Cal.App.4th 525, 528.) Such is the case with the requirement of parole.

Further, a convicted felon released on parole is subject to substantial restraints on his liberty and is deemed to remain in the constructive custody of the Department of Corrections and Rehabilitation. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1127; see also *People v. Nicholson* (2004) 123 Cal.App.4th 823, 832.) As the United States Supreme Court has explained: "A California inmate may serve his parole period either in physical custody, or elect to complete his sentence out of physical custody and subject to certain conditions. [Citation.] Under the latter option, an inmate-turned-parolee remains in the legal custody of the [former] California Department of Corrections through the remainder of his term [citation], and must comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers . . . ." (*Samson, supra,* 547 U.S. at p. 851.) A parolee's conviction of a felony "justifies imposing extensive restrictions on the individual's liberty. . . . Given the previous conviction and the proper imposition of conditions, the State has an overwhelming

7

interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 483.)

The restraints on liberty and constructive custody status further demonstrate that service of parole is part of the punishment imposed following a defendant's conviction. As a result, someone who assists a parolee in absconding from parole supervision has assisted that felon avoid a component of his punishment in violation of section 32. The gist of the offense is that the accused " 'harbors, conceals or aids' the principal with the requisite knowledge and intent. Any kind of overt or affirmative assistance to a known felon may fall within these terms. . . . 'The test of an accessory after the fact is that, he renders his principal some personal help to elude punishment[]—the kind of help being unimportant.' [Citation.]" (*People v. Duty* (1969) 269 Cal.App.2d 97, 104.) Absconding, in the sense of "depart[ing] secretly and hid[ing] oneself" (Webster's 10th New Collegiate Dict. (1996) p. 4), from parole supervision constitutes "elud[ing] punishment" even if a felon has already served a portion of his sentence.

This understanding is consistent with the common law view that one can act as an accessory by assisting a prisoner escape from incarceration.[5] At common law, acting as an accessory included circumstances where " 'the principal was in prison, and the jailer was bribed to let him escape; or conveyed instruments to him to enable him to break prison and escape.' " (Perkins & Boyce, Criminal Law (3d ed. 1982) Parties to Crime, § 8, p. 750.) Similarly, Blackstone commented that assisting a prisoner escape from jail "makes a man an accessory *to the felony*." (4 Blackstone, Commentaries 38, italics added; see also *Virgin Islands v. Aquino* (3d

---

[5]     See *People v. Woods* (1992) 8 Cal.App.4th 1570, 1583, footnote 4 (describing § 32 as "[t]he common law equivalent of an accessory after the fact").

Cir. 1967) 378 F.2d 540, 553, fn. 21 [quoting Blackstone].) It does not matter how much of his sentence a principal has served. One who helps the principal avoid even part of his punishment is liable as an accessory. Because a mandatory term of parole is part of the punishment for the underlying felony, someone who assists a felon abscond entirely from parole supervision assists in the avoidance of punishment in an analogous manner to one who helps a felon escape prison.[6]

Defendant argues it would be "absurd" to hold her liable as an accessory here because the four-year sentence she received for that offense far exceeded the six-month commitment term Gray received for a parole violation. There is no absurdity. First, the comparison defendant draws is not apt. The comparison should not include the one-year prior prison term defendant received based on her own prior conviction. Thus, the proper sentence to compare is the three-year term defendant received for being an accessory. Likewise, defendant's comparison overlooks that Gray received and served a two-year prison sentence for his underlying felony of witness dissuasion. Comparing the available terms for being an accessory and witness dissuasion, the sentencing range for both offenses is the same, namely, 16 months, two, or three years. (See §§ 18, subd. (a), 33, 136.1, subd. (a), 1170, subd. (h)(1).)

Second, contrary to defendant's argument, the punishment defendant helped Gray avoid is not the penalty that might be imposed for his parole *violation*. The penalty avoided was Gray's participation in parole altogether. Indeed, by focusing only upon the potential consequences of a parole violation, it is defendant's interpretation that would lead to absurd consequences. Under

---

[6]     We need not decide here whether assistance to a parolee short of absconding from parole supervision would support a conviction for being an accessory under section 32.

defendant's view, a person who helps a felon abscond from *parole* is not liable to prosecution as an accessory because any punishment for a parole violation is a mere "administrative sanction," not punishment for the felony itself. However, a person assisting a felon abscond from felony *probation* would be liable as an accessory because the potential consequence of a probation revocation is imposition of a prison term *for the underlying felony*. (§ 1203.2, subd. (c).) The Legislature could not have intended such a result. Finally, section 972 provides that "[a]n accessory to the commission of a felony may be prosecuted, tried, and punished, though the principal may be neither prosecuted nor tried, and though the principal may have been acquitted." Thus, an accessory may indeed properly receive a greater punishment than the aided principal.

Defendant alternatively argues the rule of lenity should apply here. "That rule generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But . . . "that rule applies 'only if two reasonable interpretations of the statute stand in relative equipoise.' [Citation.]" [Citations.]' [Citations.]" (*In re M.M.* (2012) 54 Cal.4th 530, 545.) "The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies ' "only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." ' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 889.) No such uncertainty exists here. Section 32 expressly applies to one who acts with the required mental state to help a felon avoid punishment. Established authorities make clear that a mandatory period of parole supervision constitutes punishment. "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative

10

intent." (*People v. Avery* (2002) 27 Cal.4th 49, 58.)  The rule of lenity does not apply here.

Substantial evidence supported defendant's conviction.  As noted, accessory liability requires (1) that a principal commit a felony, and (2) that the defendant aid the principal (3) knowing the principal had committed a felony, and (4) intending that the principal avoid capture, conviction, or punishment. (*Plengsangtip, supra,* 148 Cal.App.4th at p. 836.)  There is no question Gray committed a felony, was sentenced to a prison term, and was released on parole. Defendant knew of the felony and Gray's parole status.  She invited Gray and his girlfriend to live with her and was aware he was a fugitive.  Indeed, defendant and Gray celebrated that he had been featured in the "Crime Stoppers" newspaper article.  Defendant also exhibited her intent to harbor Gray by creating a contingency plan should police come looking for him and by warning her boyfriend to conceal his presence.  Defendant thus assisted Gray in absconding from parole and the Court of Appeal properly found substantial evidence supported defendant's conviction.

## III.  DISPOSITION

We affirm the judgment of the Court of Appeal.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Nuckles

_____

**Unpublished Opinion** XXX NP opn. filed 2/1/12, 5th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S200612
**Date Filed:** April 22, 2013

_____

**Court:** Superior
**County:** Kings
**Judge:** Donna L. Tarter

_____

**Counsel:**

Deanna Lamb, under appointment by the Supreme Court, and David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Deanna Lamb
Central California Appellate Program
2407 J Street, Suite 301
Sacramento, CA  95816
(916) 441-3792

Melissa Lipon
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 327-9671