Filed 7/23/14  P. v. King CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SCOTT CLIFFORD KING,<br><br>    Defendant and Appellant. | F065497<br><br>(Super. Ct. No. MF009586B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne Le Mon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

The jury found Scott Clifford King and Eurie Brim III participated in the armed robbery of Christopher Barnett. King was convicted of robbery, assault with a firearm, and accessory after the fact. King argues there was insufficient evidence to support the accessory count, and a firearm enhancement pursuant to Penal Code section 12022, subdivision (a)(1)[1] was impermissibly imposed because use of a firearm was an element of the crime of assault with a firearm. We agree there was no evidence that anything King did after the robbery aided Brim or was intended to benefit Brim. We also agree, and the People concede, the firearm enhancement was improperly imposed. Accordingly, we will reverse the accessory conviction and vacate the firearm enhancement.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Information*

The information charged King with second degree robbery (§§ 211, 212.5, subd. (c)), assault with a firearm (§ 245, subd. (a)(2)), and accessory to a felony (§ 32). The information also alleged the crimes were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C) (counts 1, 2, and 4), a principal was armed with a firearm within the meaning of section 12022.53, subdivisions (b) and (e)(1) (count 1), and a principal was armed with a firearm within the meaning of section 12022, subdivision (a)(1) (count 2).

### *The Testimony*

Barnett arrived at a friend's house to have work performed on his vehicle. He was about to leave the house when a vehicle pulled in behind his. Brim exited this vehicle and approached the house. Barnett also saw King sitting in the passenger's seat of the vehicle with a green bandana over his face.[2] Barnett became suspicious so he locked the front door of the house and went to the back door in an attempt to escape. Brim was

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

[2]A third individual was driving the vehicle.

2.

entering the house through the back door so Barnett ran out the front door. When Barnett slipped on some gravel, Brim assaulted him and began taking his possessions ($400 and two gold necklaces). King exited the vehicle and pointed a shotgun at Barnett to encourage him to cooperate.

When Brim and King departed, Barnett followed the getaway vehicle and obtained the license plate number. Barnett identified Brim by his moniker when he reported the crime. He also identified Brim in a photo lineup and at trial. Barnett was not shown a photo lineup that included King, but he identified King at trial, and the vehicle used in the robbery was registered to King.[3]

Deputy Sheriff Sean Mountjoy checked the license plate number obtained from Barnett against DMV records and learned the vehicle was registered to King. Based on this information and the positive identification of Brim, Mountjoy obtained search warrants for the residences of King and Brim. The address listed for King was an unoccupied dwelling. Brim's address was an occupied apartment. Numerous items of gang-related evidence were seized from the apartment.

After leaving Brim's apartment, the deputies decided to contact Bridget Ray, who previously had been seen in the company of Brim and King. Ray permitted the deputies to search her residence. Mountjoy found King's vehicle in the garage with the license plates removed. After finding the vehicle, Mountjoy obtained a warrant to search the rest of the premises.

King eventually was located in the attic and detained without incident. King told officers he was hiding in the attic because he believed he had an outstanding warrant for his arrest. He also stated he took the license plates off of his vehicle because he heard it

---

[3]Leeandra Lewis, Barnett's companion who was in the car when these events took place, testified in a manner very similar to Barnett's. She also identified Brim and King as the perpetrators.

3.

had been used in a robbery and the sheriff's department was searching for it. King denied involvement in the robbery but stated he intended to sell the vehicle.

Mountjoy interviewed King a short while later. At that time King admitted he participated in the robbery. King also implicated Matthew Morrissette as a participant.

Sheriff's deputies eventually seized a shotgun and showed Barnett and Lewis pictures of the shotgun. Both stated it looked similar to the weapon used in the robbery.

The prosecution's expert witness, Lauro Cantu, opined Brim was a member of the criminal street gang known as Deadly Young Psyclones, or DYP (hereafter DYP), and testified this gang met the statutory criteria of a criminal street gang.

The defense attempted to establish an alibi for Brim and presented stipulations that suggested Barnett had been untruthful on the stand.

### The Verdict and Sentencing

The jury found King guilty as charged and found all enhancements true. King was sentenced to the aggravated term of five years for the robbery, plus 10 years for the gang enhancement and 10 years for the firearm enhancement. He was sentenced to a consecutive term of eight months for the accessory count, enhanced by 16 months for the gang enhancement. The sentence on the remaining count was stayed. King's total prison term was 27 years.

## DISCUSSION

### The Accessory Count

King was charged in count 4 with being an accessory to the robbery. An accessory is a "person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment …." (§ 32.) "'The crime of accessory consists of the following elements: (1) someone other than the accused, that is, a principal, must have committed a specific, completed felony; (2) the accused must have harbored, concealed, or aided the principal; (3) with knowledge that the principal committed the

4.

felony or has been charged or convicted of the felony; and (4) with the intent that the principal avoid or escape from arrest, trial, conviction, or *punishment*.' [Citations.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 607.)

To support the charge, the prosecution relied on King's vehicle being in Ray's garage, and the license plates having been removed from the vehicle. After King was apprehended, he spoke with sheriff's deputies on several occasions. On one occasion he stated he parked the vehicle in the garage and took the plates off because it was "hot" and he did not want to be caught with it. A short while later King told a different deputy that he parked the vehicle in the garage and removed the license plates because he heard the car was used in a robbery and was "hot."

The prosecution theorized that when King parked his vehicle in the garage and removed the license plates, he was aiding Brim with the intent that Brim avoid arrest, trial, conviction, or punishment. In his closing argument, the prosecutor's entire argument on the aiding element was: "So what did he do with this car some days later? Taking the plates off, trying to sell it because it was hot. Hiding that information from the police. That makes him an accessory."

The prosecutor again addressed the aiding issue in his rebuttal argument:

> "The aiding and abetting charge is Count 4, and it is charged only as to defendant Scott King. And what the aiding and abetting charge tries to capture is Scott King's performance [five days after the robbery]. Again a perpetrator committed a felony. It was another person, not Scott King. Well, that's certainly true.

> "Eurie Brim was involved in the robbery and the assault with a firearm even though he wasn't the one holding the firearm. Defendant Scott King knew the perpetrator committed the felony. Of course, he did. He's right there with him when it was happening. After the felony has been committed, the defendant harbored, concealed or aided the perpetrator. [King's attorney] made representations to you this morning that harbor, he didn't harbor him.

"Concealed?  No, he never concealed.  He was concealing himself up in the attic[,] but aided.  When you're getting rid of a car that was used in this crime to cover your tracks, you're aiding the people who are involved in the crime.  That's where the aiding and abetting offense fits on all fours on Scott King's head and where criminal liability should be[,] at least for Count 4[,] found for Scott King."

While the prosecutor's argument may have some superficial appeal, it was devoid of substance.  Unquestionably, King was hiding the vehicle from law enforcement.  The question, however, is how did that action aid Brim?  The vehicle was identified immediately after the crime as belonging to King because Barnett and Lewis had provided the investigating officers with the license plate number of the vehicle used by the perpetrators to escape.  Moreover, Brim's identity was known to the investigating officers because Barnett and Lewis had identified Brim by name immediately after the assault.  Except for Brim and King leaving the scene immediately after the robbery, there was no evidence they were together at any time after the robbery.[4]  Thus, no one can argue the vehicle was used to hide Brim from the police.  Nor was there any evidence admitted at trial that was obtained from the vehicle.  Quite simply, there was no logical connection between hiding the vehicle and Brim avoiding arrest, trial, conviction, or punishment.

The People, adopting the reasoning of the prosecution at trial, argue "appellant's actions in storing his car in the garage and taking off the license plates was intended to hinder law enforcement investigation of the crime and thereby enable both [King] and [Brim] to avoid criminal liability for their commission of that crime."  The People continue by asserting that "[c]oncealing the car used in the robbery helped to prevent law enforcement from verifying Barnett's and Lewis's story and from finding any evidence

---

[4]The People agree that King's driving Brim from the scene does not make King an accessory.  Our holding in *In re Malcolm M.* (2007) 147 Cal.App.4th 157, 171 prevents a principal in a felony from being convicted as an accessory for fleeing the scene of the crime with another principal.

that might have been in the car. Moreover, by avoiding arrest for as long as possible, appellant also avoided possibly making admissions that could implicate Brim or being found with evidence that implicated both himself and Brim. Accordingly, his actions in fact reasonably showed he intended to help Brim 'avoid or escape arrest, trial or conviction or punishment.'"

We address each of these contentions seriatim. First, hiding the vehicle most certainly was intended to hinder law enforcement's investigation. To be liable as an accessory, however, King must have aided Brim with the intent to benefit Brim. King's stated reason for hiding the vehicle, however, was to help himself avoid capture and prosecution. The People have failed to explain how not locating the vehicle would have aided Brim, who (1) did not own the vehicle, (2) was not near the vehicle when it was found, and (3) already had been identified positively by the victim. Moreover, the People fail to explain how concealing the vehicle somehow hindered the investigation of Brim. The record does not reveal any evidence that was obtained from the vehicle. Nor do the People explain how location of the vehicle was necessary to pursue the prosecution of Brim.

Next, the People argue that concealing the vehicle prevented law enforcement from verifying Barnett's and Lewis's description of events. The People do not explain, however, how the vehicle somehow verified Barnett's and Lewis's testimony, especially as that testimony related to Brim. Indeed, it would appear the importance to the prosecution of King's action in concealing the vehicle was to establish his guilt, not Brim's guilt. The prosecution argued concealing the vehicle and removing the license plates was proof of that guilt.

The People also claim King's actions concealed any evidence that may have been in the car. Since there was no evidence found in the car, this argument is unsupported by the record.

7.

Finally, the People suggest that by avoiding arrest, King also avoided making any admissions that might have implicated Brim. Once again, the record does not contain any suggestion King made admissions that implicated Brim, nor was any evidence implicating Brim found when King was arrested.

Simply stated, there is no factual foundation for any of the inferences the People suggest the jury could have drawn. There was no evidence found in the vehicle, the vehicle was not significant to the prosecution of Brim, and we cannot discern from the record any benefit to Brim by the concealment of the vehicle. Since there was no benefit to Brim from concealing the vehicle, it is inconceivable King concealed the vehicle to benefit Brim. The lack of any evidence, let alone substantial evidence, mandates the reversal of this conviction.

### *The Section 12022 Enhancement*

The jury found true an enhancement on count 2 that a principal was armed with a firearm within the meaning of section 12022, subdivision (a)(1). Count 2 charged assault with a firearm, in violation of section 245, subdivision (a)(2). As the jury was instructed, to violate this section, a defendant must have done "an act with a firearm that by its nature would directly and probably result in the application of force to a person." Section 12022, subdivision (a)(1) enhances the sentence of anyone "who is armed with a firearm in the commission of a felony."

The section specifically states, however, that the enhancement does not apply if "the arming is an element of that offense." Since assault with a firearm includes as an element of the offense the use of a firearm, the Legislature has specifically precluded imposition of the enhancement. The People concede the finding on the enhancement and the term imposed for the enhancement must be vacated.

## DISPOSITION

The conviction for accessory is reversed.  The true finding on count 2 on the section 12022, subdivision (a)(1) enhancement is vacated, as is the sentence on that enhancement.  The judgment is affirmed in all other respects.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.