Filed 3/22/21  P. v. Patino CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C090280 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-2011-0006437, SF117955A) |
| v. | |
| MARCO ANTONIO PATINO, | |
| Defendant and Appellant. | |

Defendant Marco Antonio Patino appeals the trial court's order denying his petition for resentencing pursuant to Penal Code section 1170.95.[1]  On appeal, defendant contends (1) the trial court erred when it ruled that his conviction did not implicate felony-murder principles or the natural and probable consequences doctrine, and (2) his voluntary manslaughter conviction is eligible for relief under the new law.  Because we disagree with the second contention, we need not reach the first, and we affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

1

BACKGROUND

An April 2012 information charged defendant with committing willful, deliberate, premeditated murder (§ 187) in 2009, and seven other crimes.

In October 2012, the trial court granted the prosecution's request to amend the murder charge to voluntary manslaughter (§ 192, subd. (a)), and defendant pleaded guilty to manslaughter and four other crimes. After the three remaining counts were dismissed, the trial court imposed a sentence of 29 years eight months in state prison.

"In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which restricted the circumstances under which a person can be liable for felony murder and abrogated the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) [The law added section 1170.95,] . . . a procedure permitting qualified persons with murder convictions to petition to vacate their convictions and obtain resentencing if they were previously convicted of felony murder or murder under the natural and probable consequences doctrine." (*People v. Flores* (2020) 44 Cal.App.5th 985, 989 (*Flores*).)

In July 2019, defendant filed a petition for resentencing, seeking vacatur of his manslaughter conviction pursuant to section 1170.95, arguing he pleaded guilty to the manslaughter charge "in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony[-]murder rule or the natural and probable consequences doctrine."

The trial court denied the petition, ruling "evidence presented at the preliminary examination clearly showed that this case did not involve felony murder or a natural and probable consequences theory."

Defendant timely appealed.

DISCUSSION

I

Defendant's first claim is that the trial court's ruling was "not supported by substantial evidence." The People argue we need not reach the question, because "the section 1170.95 process is inapplicable to" defendant.

We agree with the People, for the reasons explained below.

II

Recognizing that his effort to obtain reversal and remand of the trial court's order requires resolution of the question whether manslaughter convictions fall within the purview of section 1170.95, defendant argues "logic and statutory construction require that he be granted the benefits of a statute." The People disagree, contending section 1170.95 "applies only to those convicted of murder."

We agree with the People.

Defendant argues that the *only* "logical way to read" language in subdivision (a)(2) of section 1170.95, is that "the Legislature intended those who pleaded to a lesser crime to avoid a murder conviction to be able to challenge their convictions of the lesser crime by way of this petition process." The provision, which states one of the three threshold (and conjunctive) conditions that a successful petitioner must satisfy, reads: "The petitioner was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*." (§ 1170.95, subd. (a)(2), italics added.)

We disagree that the only reasonable reading of this language, in context, is that a manslaughter conviction is eligible for relief pursuant to section 1170.95. (See *Flores, supra*, 44 Cal.App.5th at p. 995 [rejecting a similar contention, because it "places outsized importance on a single clause to the exclusion of the provision's other language," as "the remaining portions of section 1170.95 repeatedly and exclusively refer to murder, not manslaughter"].)

Defendant contends that if eligibility for relief under section 1170.95 were limited to murder convictions, then the language of section 1170.95, subdivision (a)(2) that we italicized above would be "meaningless or superfluous," as "there would have been no reason to include" it.

We disagree, for the reasons provided in *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919: "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply. Regardless of whether that clarification was necessary, ' "the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision." ' [Citation.] Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage. [Citation.] Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.' "

Even if we assume for the sake of argument that subdivision (a)(2) is ambiguous, we agree with the analysis in *People v. Turner* (2020) 45 Cal.App.5th 428, that the legislative history of Senate Bill No. 1437 reflects that the Legislature wanted to provide relief only to those who were convicted of felony murder or of murder on a natural and probable consequences theory. (See *Turner*, at pp. 436-438.)

Defendant maintains that our conclusion leads to absurd results, because a defendant convicted after a jury trial "of a now-invalidated theory of felony murder could have his murder conviction vacated under section 1170.95," whereas a different defendant, "who engaged in the same conduct but accepted a voluntary manslaughter plea deal resulting from the fear of a potential or threatened felony-murder conviction would continue being saddled with the consequences of that decision." Defendant insists that the two defendants "are identically situated" "in terms of culpability"; but the defendant who accepted the prosecution's offer "would be punished more harshly."

4

Defendant's scenario ignores that section 1170.95 contemplates relief for those convicted "of a now-invalidated theory of felony murder," *only if* they can demonstrate that they "could not be convicted of . . . murder because of changes to [s]ection 188 or 189 made effective" by Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  In addition to the "actual killer" (§ 189, subd. (e)(1)) and one who with intent to kill assisted the actual killer (§ 189, subd. (e)(2)), new section 189, subdivision (e)(3) contemplates murder liability for one who "was a major participant in the underlying felony and acted with reckless indifference to human life."  Thus, the hypothetical is too general for purposes of the question before us, as *neither* of the two individuals in the hypothetical would be entitled to relief if they were both major participants in an underlying felony and acted with reckless indifference to human life; but the individual who accepted a voluntary manslaughter plea would be punished *less* harshly.

Further, even assuming defendant's hypothetical is valid, our conclusion that defendant's voluntary manslaughter conviction is not eligible for relief pursuant to section 1170.95 still is not "absurd," because the Legislature reasonably could have concluded that reform is necessary only in murder cases.  (See *Flores, supra*, 44 Cal.App.5th at pp. 996-997 [rejecting the contention that an interpretation "limit[ing] [section 1170.95's] ameliorative benefits only to defendants convicted of murder" would be absurd].)

Defendant's invocation of the rule of lenity is unavailing, because the rule—which " 'generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation" ' "—does not apply simply because there are multiple *reasonable* interpretations of a penal statute.  (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.)  It applies only in cases of egregious ambiguity, where we can only guess what the Legislature intended.  (*Ibid.*)  "No such uncertainty exists here." (*Ibid.*)

5

# III

Defendant argues "it is a violation of equal protection to exclude" his manslaughter conviction from section 1170.95 relief. The People disagree, arguing that defendant is not similarly situated to defendants convicted of murder, and the Legislature has a rational basis to distinguish between voluntary manslaughter and murder convictions.

We agree with the People.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

Because defendant was convicted of voluntary manslaughter, a different crime from murder, that carries a different punishment, he is not similarly situated to those convicted of murder. (See *People v. Cervantes* (2020) 44 Cal.App.5th 884, 888 [rejecting an equal protection challenge to section 1170.95 by an offender convicted of voluntary manslaughter].) Thus, defendant's equal protection challenge fails at the first step.

Defendant's contention—that the relevant similarity is that both he ("who pleaded guilty to voluntary manslaughter to avoid a felony[-]murder conviction") and "a prisoner convicted of felony murder," suffer from "convictions [that] were obtained before [Senate Bill No. 1437's] effective date and where in neither case could a felony[-]murder conviction now be obtained under the law"—is unpersuasive, as it ignores *Cooley*'s guidance that, when considering an equal protection challenge, the relevant inquiry is whether the claimant is similarly situated *for purposes of the law challenged*. Section 1170.95's objective is to provide relief to those *convicted* of felony murder. Defendant's

6

manslaughter conviction renders him not similarly situated to those the law was intended to benefit.

## DISPOSITION

The judgment (order) is affirmed.


                                                             /s/
                                                   RAYE, P. J.


We concur:


/s/
HULL, J.


/s/
HOCH, J.

7