Filed 1/13/26

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAQUON RAY WASHINGTON,<br><br>    Defendant and Appellant. | B337590<br><br>(Los Angeles County<br>Super. Ct. No. NA111833) |

————————————

APPEAL from an order of the Superior Court of Los Angeles County, Laura Laesecke, Judge. Reversed and remanded.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

# INTRODUCTION

Does an incarcerated defendant identified as eligible for resentencing under Penal Code[1] section 1172.75 lose the opportunity for such relief if he or she is released on parole before the resentencing takes place? We answer that question no; such an individual remains eligible and should still be resentenced. Section 1172.75 requires that the defendant be incarcerated at the *beginning* of the process, when correctional officials "identify those persons in their custody currently serving a term for a judgment that includes" a one-year prior prison term enhancement imposed under section 667.5, former subdivision (b) (section 667.5(b)). (See § 1172.75, subd. (b).) It does not require the defendant thereafter remain incarcerated until the time of resentencing to maintain his or her eligibility for relief. Nor is resentencing such a subsequently released defendant an empty exercise, as it can afford practical relief that includes shortening the applicable parole term.

# BACKGROUND

## A. Plea and Sentence

In 2019, the People charged Daquon Ray Washington with first degree burglary with a person present (§ 459; count 1) and grand theft of an automobile (§ 487, subd. (d)(1); count 2). The information alleged that, within five years of committing these crimes, Washington had served separate jail terms for first degree burglary (§ 459) and receiving stolen property (§ 496, subd. (a)). Based on his prior first degree burglary conviction,

---

[1] All further unspecified statutory references are to the Penal Code.

Washington was subject to having his sentence on each count doubled under section 1170.12, subdivision (c)(1) and to the imposition of a five-year enhancement on count 1 pursuant to section 667, subdivision (a)(1).  Due to his prior jail terms, the information also alleged Washington was subject to two one-year enhancements pursuant to then-section 667.5(b).

Washington pleaded no contest to both counts and admitted serving terms for first degree burglary and receiving stolen property within the five years preceding his current offenses.  The trial court sentenced Washington to eight years in state prison, based on the midterm of four years on count 1 doubled pursuant to section 1170.12, subdivision (c)(1).  The court sentenced Washington to the midterm of two years on count 2 but stayed this part of the sentence pursuant to section 654.  The court imposed but stayed the section 667, subdivision (a) five-year enhancement and the section 667.5(b) one-year enhancements.  The court also imposed various fines and assessments.

B.    Amendments to the Penal Code Concerning Prior Prison Term Enhancements

In 2021, the Legislature enacted section 1172.75,[2] which provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to [section 667.5(b)], except for any enhancement imposed for a prior conviction for a sexually

---

[2] Upon enactment the statute was initially codified as section 1171.1, but in 2022 the Legislature renumbered it section 1172.75 without substantive change.  (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.)  For ease of reference, we refer to section 1172.75 throughout.

3

violent offense . . . is legally invalid." (*Id.*, subd. (a).) The statute sets forth a procedure for identifying and resentencing individuals whose sentences include such a "legally invalid" enhancement. First, as relevant here, the Department of Corrections and Rehabilitation (CDCR) "shall identify those persons in [its] custody currently serving a term for a judgment that includes an [invalid section 667.5(b)] enhancement . . . and shall provide the name of each person, along with the person's date of birth and the relevant case number or docket number, to the sentencing court that imposed the enhancement." (*Id.*, subd. (b).) "Upon receiving [such information from the CDCR], the court shall review the judgment and verify that the current judgment includes a[n invalid section 667.5(b)] enhancement . . . . If the court determines that the current judgment includes an [invalid section 667.5(b)] enhancement . . . , the court shall recall the sentence and resentence the defendant." (*Id.*, subd. (c).)[3]

Section 1172.75, subdivision (d) explains what happens at resentencing after the CDCR has identified the defendant and the court has verified their eligibility for relief:

"(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this

---

[3] The statute includes parallel provisions for county correctional administrators to identify individuals serving their term in jail who are eligible for resentencing. (§ 1172.75, subds. (b) & (c).) As Washington's case involves the CDCR, we refer only to the CDCR when discussing the statute.

4

section shall not result in a longer sentence than the one originally imposed.

"(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.

"(3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.

"(4) Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1172.75, subd. (d)(1)-(4).)

C.    **The CDCR Identifies Washington as Serving a Term for an Invalid Section 667.5(b) Enhancement**

In 2022, the CDCR identified Washington as a person in its custody serving a sentence that included an invalid section 667.5(b) enhancement.  On April 18, 2024, the superior court held a hearing and concluded Washington was not entitled to resentencing under section 1172.75 because his now-invalid section 667.5(b) enhancements had been stayed when originally imposed at sentencing.  At the time, there was a split of authority

5

among the Courts of Appeal as to whether a defendant whose invalid section 667.5(b) enhancement was stayed was entitled to resentencing under section 1172.75. (See, e.g., *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1154-1155 [collecting cases].)

Washington timely appealed. Shortly after Washington filed his opening brief, our Supreme Court resolved the split of authority regarding stayed invalid section 667.5(b) enhancements, holding in *People v. Rhodius* (2025) 17 Cal.5th 1050 that "section 1172.75[, subdivision ](a) applies to enhancements that were imposed as part of the defendant's original judgment, regardless of whether the enhancement was stayed or executed. If the enhancement is no longer authorized under the current version of section 667.5(b), section 1172.75[, subdivision ](a) renders the enhancement invalid. And the retroactive invalidation of the previously imposed enhancements in turn mandates resentencing under section 1172.75, according to the procedures set forth therein." (*Id*. at p. 1068.)

Additionally, while his appeal was pending, Washington was released on parole.

## DISCUSSION

Conceding that *Rhodius* would otherwise mandate the court erred in not resentencing Washington, the People contend that Washington is no longer entitled to resentencing because he has now been released on parole. According to the People, section 1172.75 requires resentencing on a judgment that includes an invalid section 667.5(b) enhancement only if the defendant is currently incarcerated at the time of the resentencing pursuant to that judgment.

Washington asserts he is still eligible for resentencing under section 1172.75 despite his release because he remains on

6

parole. Because his 2019 conviction for first degree burglary with a person other than an accomplice present in the residence qualifies as a " 'violent felony' " under section 667.5, subdivision (c)(21), upon being released from prison Washington became "subject to parole supervision by the [CDCR]." (§ 3000.08, subd. (a)(2).) Pursuant to section 3000.01, subdivision (b)(1), "[a]ny inmate sentenced to a determinate term [as was Washington] shall be released on parole for a period of two years." That time can be shortened to not less than one year or extended to no more than three years depending on various circumstances not at issue in this appeal. (§ 3000.01, subds. (b)(1), (c)(1).)[4]

## A. Standard of Review and Principles of Statutory Interpretation

We review questions of statutory interpretation de novo. (*People v. Rhodius*, *supra*, 17 Cal.5th at pp. 1057-1058.)

"We consider first the words of a statute, as the most reliable indicator of legislative intent." (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029,

---

[4] Under section 3000.01, subdivision (b)(1), "The inmate will be reviewed by the Division of Adult Parole Operations for possible discharge from parole no later than 12 months after release from confinement. If at the time of the review the inmate has been on parole continuously for 12 months since release from confinement without a violation and the inmate is not a person required to be treated as described in [s]ection 2962 [relating to mentally disordered individuals], the inmate shall be discharged from parole." The running of the parole period can be suspended for parole violations, but "in no case may an inmate who is released on parole for a period of two years be retained under parole supervision or in custody for a period longer than three years from the date of their initial parole." (*Id.*, subd. (c)(1).)

1037.)  We " ' "look to the statute's words and give them their usual and ordinary meaning," ' as ' "[t]he statute's plain meaning controls the court's interpretation unless its words are ambiguous." ' [Citation.]  We construe statutory text in context and ' " 'harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " ' [Citation.]  If, after this analysis, 'the statute is ambiguous, we may consider a variety of extrinsic aids,' including legislative history."  (*People v. Rhodius*, *supra*, 17 Cal.5th at pp. 1057-1058.)

## B. A Parolee Can Be Eligible for Resentencing Under Section 1172.75

Under the plain language of section 1172.75, a defendant such as Washington is eligible for resentencing where he is released on parole after having been identified by the CDCR as serving a term for a judgment which includes an invalid section 667.5(b) enhancement.

The resentencing process begins when the CDCR identifies an inmate as "[a] person[] in [its] custody currently serving a term for a judgment that includes an [invalid section 667.5(b)] enhancement" and provides information about them to the sentencing court.  (§ 1172.75, subd. (b).)  Because "parole is a mandatory component of any prison sentence" (*People v. Nuckles* (2013) 56 Cal.4th 601, 609), Washington suggests that anyone in the constructive custody of the CDCR, such as a parolee, is "currently serving a term" as that phrase is used in section 1172.75 and should be identified by the CDCR as eligible for resentencing.  We disagree.

Subdivision (b) of section 1172.75 requires two things in addition to the judgment including an invalid section 667.5(b)

8

enhancement: (1) that the defendant be in "custody" and (2) be "currently serving a term" on the judgment containing the invalid enhancement. Even if being in the CDCR's constructive custody via parole satisfies the "custody" requirement, it cannot satisfy the requirement that the defendant be "currently serving a term." Being on parole is not a service of a "term." "[T]he prison 'term' is the actual time served in prison *before* release on parole, and the day of release on parole marks the *end* of the prison term." (*People v. Jefferson* (1999) 21 Cal.4th 86, 95.)

That a defendant must be incarcerated at the time the CDCR was tasked with identifying inmates for possible resentencing does not mean, however, that the defendant remains eligible for resentencing only by staying in prison. Once the CDCR has identified the inmate as potentially eligible, the only remaining statutory hurdle is court verification "that the current judgment includes a sentencing enhancement described in [section 1172.75, ]subdivision (a). If the court determines that the current judgment includes an [invalid section 667.5(b)] enhancement . . . , the court shall recall the sentence and resentence the defendant." (§ 1172.75., subd. (c).) The statute does not task the court with verifying the defendant remains incarcerated, or condition the court's obligation to resentence on continued incarceration. Where a defendant remains in prison, "the current judgment" is the operative judgment pursuant to which they are incarcerated. Where a defendant is on parole after having been identified as potentially eligible, "the current judgment" at the time of court verification is the judgment under which they were incarcerated and pursuant to which they were released on parole. This follows from the nature of parole, which is "include[d]" in the sentence for which a defendant is

9

imprisoned (§ 3000, subd. (a)(1)) and necessarily follows a defendant's release from prison after having served his or her term of incarceration (§ 3000.08, subd. (a)).

The People rely on *People v. Escobedo* (2023) 95 Cal.App.5th 440 to argue "current judgment" as used in section 1172.75, subdivision (c) means a judgment pursuant to which the defendant is still incarcerated, but that case is inapposite. *Escobedo* holds that when an inmate is serving a term for an offense committed in prison, their "current judgment" for purposes of section 1172.75 is the judgment for the in-prison offense and not the judgment under which they were imprisoned at the time they committed the in-prison offense. (*Escobedo*, at p. 451.) *Escobedo* has no application here. Washington did not commit his offense while in prison and there is only one judgment, namely, the 2019 judgment sentencing Washington to prison for eight years. Further, neither of the appellants in *Escobedo* had been released on parole (see *id.* at pp. 446-447) and, thus, the court had no occasion to consider what a parolee's "current judgment" is for purposes of section 1172.75.

Under the section 1172.75 resentencing scheme, there is necessarily a lag between the time the CDCR provides the court with information about a defendant potentially eligible for resentencing, and the time when the court can determine whether in fact the defendant is entitled to resentencing and in fact resentence him or her. Recognizing this aspect of the process, the Legislature included in section 1172.75 deadlines for the CDCR and resentencing courts to act. The CDCR was required to provide information "for individuals who have served their base term and any other enhancements and are currently serving a sentence based on the enhancement" by March 1, 2022,

and the courts were required to review the judgment and complete resentencing for these individuals seven months later, by October 1, 2022 (§ 1172.75, subds. (b)(1), (c)(1)); "for all other individuals," the CDCR was required to make referrals by July 1, 2022, and the courts were required to undertake their review and complete resentencing a year and a half later, by December 31, 2023 (*id.*, subds. (b)(1), (c)(1)).

Given this delay between the time the CDCR identifies a potentially eligible inmate and the court's review, it was to be expected that some individuals identified by the CDCR would have been released on parole by the time the court took up the matter. Thus, it appears the Legislature intended the court-related criterion for resentencing eligibility—whether "the current judgment" includes an invalid section 667.5(b) enhancement—to operate independently from earlier conditions applicable at the CDCR identification stage. If the Legislature had intended to preclude resentencing for individuals who had been released on parole after being referred to the court by the CDCR, we expect it would have stated so in clear, express terms. (See *People v. Rhodius*, *supra*, 17 Cal.5th at p. 1062 ["Had the Legislature drafting the rule of retroactive invalidation in [§] 1172.75[, subd. ](a) wished to establish a different set of rules for cases involving stayed prior-prison-term enhancements, we expect that it would have said so"].) But it did not include such continued incarceration as a requirement, and instead conditioned eligibility for resentencing only on whether "the current judgment" includes an enhancement declared invalid under the statute.

The People contend we should read two provisions of section 1172.75 as indicating the Legislature intended that

11

resentencing eligibility terminate upon release on parole. First, when resentencing, "[t]he court may consider postconviction factors, including . . . evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172,75, subd. (d)(3).) The People argue the Legislature's reference to *"continued* incarceration" (*ibid.,* italics added) necessarily presupposes that the individual being resentenced is currently incarcerated. This provision authorizes the resentencing court to consider certain factors which might be relevant to a currently incarcerated individual, such as evidence that the threat the individual poses to society is reduced or no longer present. It does not mean that resentencing is unavailable to individuals who are no longer incarcerated by the time of resentencing.

Second, the People point to the Legislature's prioritization of resentencing for those individuals who had served their base term and other enhancements and were then serving "a sentence based on the [invalid section 667.5(b)] enhancement." (§ 1172.75, subds. (b)(1) & (c)(1).[5] This provision also does not show that the Legislature intended to require defendants remain incarcerated until the time of their resentencing. Although the Legislature granted priority to those "who have served their base term and any other enhancements and are currently serving a sentence based on [an invalid section 667.5(b)] enhancement" (*ibid*.), it did not limit relief to those individuals but instead provided a later

---

[5] Under the statute, "all other enhancements," i.e., enhancements other than invalid section 667.5(b) enhancements, "shall be considered to have been served first." (§ 1172.75, subd. (b)(1).)

deadline for "all other individuals."  (*Id.*, subds. (b)(2) & (c)(2).)
The plain language definition of this second group—"all other
individuals"—is broad enough to encompass persons paroled after
having been identified.

In allocating scarce judicial resources, the Legislature could
have reasonably concluded that individuals who remained
incarcerated solely due to an invalid section 667(b) enhancement
should be resentenced first because resentencing would
presumably render them immediately eligible for release from
incarceration and, thus, any delay in resentencing would also
delay that release.  The Legislature also could have reasonably
concluded that thereafter resentencing "all other individuals"
entailed less pressing liberty interests, either because the
defendant potentially still would have to serve other portions of
their prison sentence despite resentencing or in a case such as
Washington's would have been released from custody on parole.

The People also rely on the uncodified preamble to the
legislation enacting section 1172.75, which states in relevant
part, "it is the intent of the Legislature to retroactively apply . . .
Senate Bill [No.] 136 of the 2019-[20]20 Regular Session
[amending section 667.5(b) to provide for a sentence
enhancement only for prior terms for certain sexually violent
offenses] to all persons currently serving a term of incarceration
in jail or prison for these repealed sentence enhancements."
(Stats. 2021, ch. 728, § 1.)  The People argue that, based on this
statement of intent, only individuals "currently serving a term of
incarceration" are eligible for resentencing under section 1172.75.

"While the preamble is ' " 'entitled to consideration' " ' in
discerning the legislative purpose [citation], we find it
unrevealing on the issue before us."  (*People v. Rhodius, supra*, 17

13

Cal.5th at p. 1064.) As discussed, the plain language of section 1172.75 contains no continued incarceration up until resentencing requirement, and we decline to read one into the statute based on an ambiguous general statement of intent. We say ambiguous because one can read the statement of intent as indicating only that the Legislature sought to retroactively apply the changes to section 667.5(b) to all individuals "currently serving a term" at the initiation of the resentencing process, namely, when the CDCR is tasked with identifying individuals potentially eligible for resentencing, as the codified statutory language provides. Even if one assumes for the sake of argument that the statement of intent refers to custodial status at the time of court review, its descriptive focus on the most common situation (where an individual identified by the CDCR is still incarcerated at the time of resentencing) does not necessarily mean the Legislature intended to deny resentencing in the rarer circumstance where an individual was released on parole after being referred by the CDCR—particularly in the absence of express statutory language to that effect.[6]

---

[6] Because we find no ambiguity in the statutory language, we need not consider excerpts from the legislative history cited by the People that refer to section 1172.75 applying to those currently incarcerated. (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.) In any event, like the statement of intent, those excerpts are consistent with the Legislature's requirement in section 1172.75, subdivision (a) that individuals be incarcerated at the beginning of the process when the CDCR is to identify those potentially eligible for resentencing. The excerpts do not suggest we should imply a continued incarceration requirement after that initial starting point which the statute does not contain.

Resentencing an individual who, like Washington, had served a term in prison and is on parole at the time of resentencing is not an idle act. "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) Where, as here, a resentencing statute is silent as to how custody credits apply to the new sentence, "generally applicable sentencing procedures govern the issue." (*People v. Steward* (2018) 20 Cal.App.5th 407, 417.) Section 1170, subdivision (a)(3) and section 2900.5, subdivision (a) provide a defendant with credit for time spent in custody. Should the resentencing court impose a sentence shorter than the original sentence, Washington may be entitled under these sections to credit for any time served that exceeds the new sentence, which could in turn reduce or terminate his period of parole. (See, e.g., *People v. Morales* (2016) 63 Cal.4th 399, 406 [under § 2900.5, subd. (a), a defendant "is entitled to credit for time served, and . . . the credit can reduce or eliminate the period of parole"]; *People v. Steward, supra*, 20 Cal.App.5th at p. 424 [under § 1170, subd. (a)(3) "excess custody credits reduce a period of parole"].)[7]

---

[7] Although the sentencing court imposed no punitive assessments against Washington, where punitive assessments have been imposed against a defendant, section 2900.5 allows the application of custody credits to reduce the amount payable on those assessments. (*People v. Lamoureux* (2020) 57 Cal.App.5th 136, 152; *People v. Pinon* (2016) 6 Cal.App.5th 956, 966-967.)

## DISPOSITION

The order denying resentencing is reversed and the matter is remanded for the superior court to resentence Washington in accordance with section 1172.75.

CERTIFIED FOR PUBLICATION


WEINGART, J.


We concur:



BENDIX, Acting P. J.



M. KIM, J.