Filed 8/14/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E073302 |
| v. | (Super.Ct.No. 19PA000973) |
| ANDRAS PETER SCHAFFER, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Patrick Lyle Christianson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Michael Cosgrove, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Any person who is required to register as a sex offender (Pen. Code, § 290[1]) and who is released on parole upon the condition they wear a global positioning system (GPS) device, or other electronic monitoring device (§ 3010.10, subd. (a)), is prohibited from removing, disabling, or rendering the device inoperable (§ 3010.10, subd. (b).)  If a parolee violates this provision, the parolee is required to be incarcerated in a county jail for 180 days.  (§ 3010.10, subd. (e).)

Defendant and appellant, Andras Peter Schaffer, was convicted and sentenced to three years in state prison in 2015 for failing to register as a sex offender.  (§ 290.018, subd. (b).)  He was released on parole in 2016 on the condition he wear a GPS monitoring device and charge it, at least twice daily.  He appeals from the July 18, 2019 superior court order, finding by a preponderance of the evidence that he violated his parole by failing to keep his GPS monitoring device charged and ordering him to serve 180 days in county jail.  (§ 3010.10, subds. (b), (e).)

Relying on the plurality opinion in *United States v. Haymond* (2019) ___ U.S. ___ [139 S.Ct. 2369; 204 L.Ed.2d 897] (*Haymond*), defendant claims he had a Fifth and Sixth Amendment right to have a jury determine whether he violated his parole based on proof beyond a reasonable doubt, and the court violated that right by denying his request to allow a jury to determine whether he violated his parole.  As we explain, defendant did

---

[1] Undesignated statutory references are to the Penal Code.

2

not have a right to have a jury determine whether he violated his parole, and the reasoning of the *Haymond* plurality does not apply to defendant's case.

## II. FACTS AND PROCEDURE

A. *Defendant's Commitment Offense and Alleged Parole Violation*

On June 29, 2015, defendant was convicted of failing to register as a sex offender (§ 290.018, subd. (b)) (the "commitment offense") and was sentenced to three years in state prison. After serving over 13 months in state prison, defendant was released on parole on August 7, 2016. As a condition of his parole, defendant was required to continually wear a GPS monitoring device and to charge the device at least twice daily, or every 12 hours, for one hour.

On June 6, 2019, the DPAO[2] petitioned to revoke defendant's parole. (§ 1203.2.) According to DPAO's parole violation report, defendant violated the terms of his parole 17 times and was returned to custody eight times between September 12, 2016, and January 1, 2019. His parole violations included failing to charge his GPS monitoring device, disabling the device, using methamphetamine, failing to participate in sex offender treatment, failing to register as a sex offender, and loitering within 250 feet of places where children congregate.

On May 25 to 26, 2019, the DAPO confirmed that defendant's GPS device was in "dead battery" status for over 19 hours, from around 8:35 p.m. on May 25, 2019 until

---

[2] The DAPO is an acronym for the Division of Adult Parole Operations of the California Department of Corrections and Rehabilitation. (See *People v. Johnson* (2020) 45 Cal.App.5th 379, 384.)

3:54 p.m. on May 26, 2019, and from 8:38 p.m. to 9:41 p.m. on May 26. A "dead battery alert" indicates that the parolee's whereabouts cannot be tracked because the parolee has not charged their GPS monitoring device.

On May 31, 2019, defendant was located and taken into custody. On July 9, 2019, defendant's counsel asked the court to conduct a jury trial on defendant's alleged parole violation, based on the then-recent plurality decision in *Haymond*, *supra*, 139 S.Ct. 2369. The court denied the request.

At defendant's parole revocation hearing on July 18, 2019, his parole agent testified that, during a May 31 interview, defendant admitted to the parole agent that he was in downtown Victorville on May 25, used narcotics, then became lost on his way home. He was then unable to charge his GPS monitoring device, and it went into dead battery status. Based on defendant's GPS tracks, the parole agent determined that, on May 25, before his GPS battery went dead, defendant was behind a retail store or strip mall in "a high crime and high drug area" of Victorville.

Defendant testified that, on Friday, May 24, 2019, he attended a class in Apple Valley. On the way back to his home, he "caught the wrong bus" and became lost. He did not have a phone, his wallet, or any money. He stayed up all night then fell asleep by a wall next to a grocery store. He claimed he did not know why he was in Victorville on May 25. The next day, someone helped him, and he borrowed money for his bus fare home. When he arrived home, he immediately put his GPS device on a charger.

B.  *The Court's Ruling on Defendant's Alleged Parole Violation*

At the conclusion of the July 18, 2019 parole revocation hearing, the court found that defendant was using drugs in Victorville when he allowed his GPS monitoring device to go into dead battery status.  The court noted that defendant's parole history was "replete" with drug use and that defendant had six prior parole violations concerning his GPS monitoring device alone.  The court told defendant, "[S]o you know what the drill is for [keeping your GPS monitoring device] charged. . . .  [M]y suspicion is just what you told the [parole] officer:  That you got out there, you used drugs, you couldn't find [your way] back because you'd been using drugs, so you didn't charge for over a day.  That's not allowable."

The court expressly found by a preponderance of the evidence that defendant violated the term of his parole that required him to "participate in continuous electronic monitoring" by failing to "properly charge" his GPS monitoring device.  The court revoked defendant's parole, reinstated him on parole, and ordered him to serve 180 days in local custody, "half time, with credits of 49 [days (§ 4019)] already served."  The court also noted that, if it had discretion to impose a lesser punishment for the parole violation, it still would have imposed the 180-day jail term based on defendant's commitment offense and record of parole violations.

## III.  DISCUSSION

Defendant claims he had a Fifth and Sixth Amendment right to have a jury determine, based on proof beyond a reasonable doubt, that he violated his parole on May 25 to 26, 2019, by failing to keep his GPS monitoring device charged.  He claims the

5

court's finding by a preponderance of the evidence that he violated his parole must be vacated and the matter remanded to the superior court with directions to allow a jury to determine beyond a reasonable doubt whether he violated his parole.

A. *Mootness*

Before we address the merits of defendant's federal constitutional claim, we address the People's request that we dismiss defendant's appeal as moot. An appeal may be dismissed as moot when, pending the appeal and through no fault of the appellant, an event occurs that renders it impossible for the reviewing court to grant the appellant any effective relief for the claims raised on appeal. (*People v. DeLeon* (2017) 3 Cal.5th 640, 645.) But a reviewing court has discretion to consider a moot claim if it is of continuing public interest, is likely to recur, and might otherwise evade appellate review. (*People v. Morales* (2016) 63 Cal.4th 399, 409.)

As the People point out and defendant concedes, there are two reasons why we are unable to grant defendant any effective relief for his federal constitutional claim. First, by the time this appeal is decided defendant will have completed his 180-day county jail term for his May 25-26, 2019 parole violation. Defendant had 49 days of custody credits on July 18, 2019, the day he was ordered to serve the 180-day term, leaving him with 131 days to serve. As a parolee confined to county jail (§ 4019, subd. (a)(5)), defendant was eligible to earn two days of custody credits for every four days he served in jail after July 18, 2019. (§ 4019, subds. (b), (c).) Even if defendant did not earn any additional custody credits after July 18, 2019, he would have served his 180-day term by November 26, 2019, 131 days after July 18. Thus, as the parties agree, defendant has served his 180-

6

day jail term for his May 25 to 26, 2019 parole violation, and we are unable to grant him any effective relief that would ameliorate his punishment.

Second, the record shows that, before the court determined that defendant violated his parole by failing to keep his GPS monitoring device charged on May 25 to 26, 2019, defendant's parole period was scheduled to expire on August 4, 2020, four years after he was released from state prison on parole. His four-year parole period cannot be extended, regardless of the outcome of this appeal. (§ 3000, subd. (b)(6).)

Subject to exceptions not applicable here, a person, like defendant, who committed a crime (their commitment offense) after July 1, 2013, and served at least one year and one day in state prison for the offense, is required to be on parole for three years following their release from state prison. (§ 3000, subd. (b)(2)(B).) The three-year parole period is suspended during the time the parolee is in custody for any parole violation. (§ 3000, subd. (b)(6).) Defendant's three-year parole period was ostensibly extended to four years based on the eight times he was returned to custody before his current parole violation. But, subject to exceptions not applicable here, "in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." (§ 3000, subd. (b)(6)(A).) Thus, defendant will no longer be on parole for his commitment offense after August 4, 2020, and he will not be in custody for any other parole violation he committed before August 4, 2020.

For these reasons, we are unable to grant defendant any effective relief for his claim, even if we were to agree it had merit. It would be pointless to remand the matter

for a jury trial on defendant's alleged May 25 to 26, 2019 parole violation, given that defendant has already served the mandatory 180-day jail term for that violation. (§ 3010.10 subd. (e).)  Defendant's four-year parole period, which expires on August 4, 2020, cannot be reduced or further extended regardless of the outcome of this appeal. Thus, the People ask that we dismiss defendant's appeal as moot.

Although defendant concedes that his claim is moot, he asks that we exercise our discretion to consider his claim, given that it is of continuing public interest to similarly-situated parolees, is likely to recur, and might otherwise evade appellate review.  (*People v. Morales*, *supra*, 63 Cal.4th at p. 409.)  We agree and exercise our discretion to consider defendant's claim.

B.  *Defendant Did Not Have a Federal Constitutional Right to Have a Jury Determine Whether He Violated His Parole by Failing to Keep His GPS Device Charged*

Defendant claims that, as applied to this case, the plurality decision in *Haymond*, *supra*, 139 S.Ct. 2369 means he had a federal constitutional right to have a jury determine whether he violated his parole by failing to keep his GPS device charged based on proof beyond a reasonable doubt.  We find no merit to this claim.

1.  The *Haymond* Plurality Decision

In *Haymond*, a jury found the defendant guilty of possessing child pornography in violation of federal law, which authorized the district judge to sentence the defendant to a term of between zero and 10 years in federal prison (18 U.S.C. § 2252(b)(2)) followed by a period of supervised release of between five years and life (18 U.S.C. § 3583(k)).

8

(*Haymond*, *supra*, 139 S.Ct. at p. 2373.)  The district court sentenced the defendant to 38 months in prison, to be followed by 10 years of supervised release. (*Ibid*.)

During the defendant's supervised release period, the government found 59 images of child pornography on his cellphone and sought to revoke his supervised release "and secure a new and additional prison sentence." (*Haymond*, *supra*, 139 S.Ct. at p. 2374.)  The district court revoked the defendant's supervised release upon finding, by a preponderance of the evidence, that the defendant knowingly downloaded and possessed 13 of the 59 images.  (See *Ibid*.)  Because the defendant's new offense was one of several offenses enumerated in 18 United States Code section 3583(k), the district court was *required to impose* a new and additional prison term of at least five years, without regard to the length of the prison term authorized by the defendant's original conviction. (*Haymond*, at p. 2374.)  The district court imposed the mandatory new and additional five-year term, with reservations.[3] (*Id.* at p. 2375.)

---

[3] As paraphrased by the *Haymond* court, the district court judge said it was "one thing" "for a judge proceeding under a preponderance of the evidence standard to revoke a defendant's supervised release and order him to serve additional time in prison within the range already authorized by the defendant's original conviction; after all, the jury's verdict, reached under the reasonable doubt standard, permitted that much punishment." (*Haymond*, *supra*, 139 S.Ct. at p. 2375.)  The judge found it " ' "repugnant" ' " that a statute would impose a new and additional " 'mandatory five-year' " punishment "without those traditional protections." (*Ibid*.)  But for the five-year mandatory minimum sentence required by 18 United States Code section 3583(k), the judge said he "probably" would have imposed a term of no more than two years, which was the maximum term the district court could have imposed under 18 United States Code section 3583(e)(3), had the defendant's new offense not been one of the offenses listed in 18 United States Code section 3583(k). (*Haymond*, at p. 2375.)

On appeal, the United States Court of Appeals for the Tenth Circuit concluded that the application of 18 United States Code section 3583(k)'s mandatory minimum five-year sentencing provision to the defendant violated his Fifth and Sixth Amendment right to have a jury determine his guilt of a criminal offense beyond a reasonable doubt. (See *Haymond*, *supra*, 139 S.Ct. at p. 2375.) The statute as applied to the defendant was unconstitutional, the Tenth Circuit reasoned, because its five-year mandatory minimum term was a "*new and higher mandatory minimum*" term than *the zero to 10-year term* that the district court was authorized to impose for the defendant's original conviction, and rested on facts found by the court by a preponderance of the evidence rather than on facts found by a jury beyond a reasonable doubt. (See *Ibid*.) The high court granted review to consider the Tenth Circuit's constitutional holding. (*Ibid*.)

A plurality of the *Haymond* court (four of nine justices) agreed with the Tenth Circuit's reasoning and conclusion. The plurality observed that "[a] judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct." (*Haymond*, *supra*, 139 S.Ct. at p. 2376.) In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the high court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id*. at p. 490.) The question is whether the requisite judicial fact finding exposes the defendant to a greater punishment than that authorized by the jury's guilty verdict. (*Id*. at p. 494.)

More recently, in *Alleyne v. United States* (2013) 579 U.S. 99, 112 (*Alleyne*), the high court ruled that "the principle applied in *Apprendi* applies with equal force to facts

increasing the mandatory minimum" penalty for a criminal offense as it does to facts increasing the statutory maximum penalty. (See *Haymond*, *supra*, 139 S.Ct. at p. 2378; citing *Alleyne*, at p. 112.) "Both the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' " (*Haymond*, *supra*, at p. 2378.)

Based on its holdings in *Apprendi* and *Alleyne*, the *Haymond* plurality concluded that 18 United States Code section 3583(k), as applied to the defendant, violated his Fifth and Sixth Amendment right to a jury trial. (*Haymond*, *supra*, 139 S.Ct. at p. 2378.) Because the defendant faced a prison term of between zero and 10 years for his initial conviction, the district court's finding by a preponderance of the evidence that he committed a new offense, "increased 'the legally prescribed range of allowable sentences' in violation of the Fifth and Sixth Amendments," because it triggered the application of the five-year mandatory minimum term prescribed by 18 United States Code section 3583(k). (*Haymond*, at p. 2375.)

The *Haymond* plurality distinguished the operation of 18 United States Code section 3583(k) from "traditional parole and probation practices" that are "entirely harmonious with the Fifth and Sixth Amendments." (*Haymond*, *supra*, 139 S.Ct. at pp. 2381-2382.) That is, if a judge sentences a defendant on supervised release (or on probation or parole) "to serve *only* the remaining prison term authorized by statute for [the] original crime of conviction," the defendant's right to a jury trial is not implicated. (*Id*. at pp. 2382.) In contrast, 18 United States Code section 3483(k), as applied to the *Haymond* defendant and similar defendants, exposes them to "an additional mandatory minimum prison term well beyond that authorized by the jury's verdict—all based on

facts found by a judge by a mere preponderance of the evidence." (*Haymond*, at p. 2382.) The *Haymond* plurality emphasized that its decision was "limited to § 3583(k) . . . and the *Alleyne* problem raised by its 5-year mandatory minimum term of imprisonment." (*Id*. at p. 2383.)

Justice Breyer concurred in the judgment of the four-justice plurality in *Haymond*. (*Haymond*, *supra*, 139 S.Ct. at p. 2385.) Justice Breyer agreed with the plurality that 18 United States Code section 3583(k) was unconstitutional, given that certain features of the statute made it "less like ordinary [supervised release] revocation and more like punishment for a new offense, to which the jury right would typically attach." (*Haymond*, at p. 2386.)

2. Analysis

Defendant claims that the reasoning of the *Haymond* plurality applies with equal force to the mandatory 180-day custody sanction of section 3010.10. We disagree and conclude that section 3010.10's mandatory 180-day custody sanction did not violate defendant's federal constitutional right to a jury trial.

We begin by noting that, in California, "[a]lthough parole constitutes a distinct phase from the underlying prison sentence, a period of parole following a prison term has generally been acknowledged as a form of punishment." (*People v. Nuckles* (2013) 56 Cal.4th 601, 609 (*Nuckles*); see *Samson v. California* (2006) 547 U.S. 843, 850 (*Samson*) ["[P]arolees are on the 'continuum' of state-imposed punishments"].) "[P]arole is a form of punishment accruing directly from the [parolee's] underlying conviction" and is a "mandatory component" of the parolee's prison sentence. (*Nuckles*, at p. 609; see

12

§ 3000, subd. (a)(1) ["A sentence resulting in imprisonment in the state prison . . . shall include a period of parole supervision or post release community supervision."].)[4]

In California, four years is the longest possible parole period for most nonviolent felons who, like defendant, are sentenced to determinate terms (§ 3000, subd. (b)(6)(A).) Under current law, such parolees cannot be returned to prison during their parole period, no matter how many times they violate their parole; they can only be incarcerated in local custody for up to 180 days for each parole violation. (§ 3056, subd. (a).)

Unlike the five-year *additional* prison term imposed on the defendant in *Haymond* for his *new offense* of possessing child pornography, defendant's 180-day sentence for his parole violation of failing to keep his GPS device charged (§ 3010.10, subd. (b)) was limited to 180 days, or the balance of his four-year parole period, whichever term ended earlier. (§ 3010.10, subd. (e), see § 3000, subd. (b)(6)(A) ["Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate . . . whichever is earlier, the inmate shall be discharged from custody"]; *Nuckles*, *supra*, 56 Cal.4th at p. 608, quoting *People v. Jefferson* (1999) 21 Cal.4th 86, 95-96 [" '[T]he length of time an offender may remain on parole or may be incarcerated for a

---

[4] "A California inmate may serve his parole period either in physical custody, or elect to complete his sentence out of physical custody and subject to certain conditions. [Citation.] Under the latter option, an inmate-turned-parolee remains in the legal custody of the California Department of Corrections [and Rehabilitation] through the remainder of his term [citation], and must comply with all of the terms and conditions of parole. . . ." (*Samson*, *supra*, 547 U.S. at p. 850.) "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner [or parolee] abide by certain rules during the balance of the sentence." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 477.)

parole violation is measured by statutory provisions setting the maximum parole period . . . .' "].) Thus, defendant's 180-day jail sentence for his current parole violation did not subject him to any greater punishment than he had already received at the time he was sentenced to three years in state prison for his commitment offense in 2015.

Defendant maintains that his "six months in custody constituted an increase in the floor of the minimum sentence that a defendant could receive at the time of 2015 sentencing on the underlying [failure to register] offense" namely, the 90-day minimum jail term that comes with a grant of probation. (§ 290.018, subd. (c).) But defendant was not granted probation for his failure-to-register conviction in 2015. (*Ibid.*) Rather, he was sentenced to three years in state prison, a term fully authorized by the jury verdict finding him guilty of the offense. (§ 290.018, subd. (b).)

Thus, the 180-day jail sentence imposed on defendant for his parole violation of failing to keep his GPS device charged (§ 3010.10, subds. (b), (e)) did not present the concern, present in *Haymond*, of bypassing a criminal defendant's federal constitutional jury trial right for a *new criminal offense*. The statute in *Haymond* specifically required imposition of a mandatory five-year additional term based upon a finding that the defendant violated a specific federal criminal statute. This is precisely why Justice Breyer noted in his concurring opinion that the federal statute at issue operated, "less like ordinary [supervised release] revocation and more like punishment for a new offense, to which the jury right would typically attach." (*Haymond*, 139 S.Ct. at p. 2386.) The statute at issue here, section 3010.10, is clearly distinguishable from the statute at issue in *Haymond* in that section 3010.10 does not require the court to impose a mandatory term

based upon the court's finding by a preponderance of the evidence that the defendant violated the statute and thus committed a new crime.

Moreover, a person who violates section 3010.10 will not lose their liberty for any longer period than the jury's fact finding concerning the person's underlying commitment offense or sentencing enhancements allows. Defendant's maximum exposure based on his original commitment offense was three years in state prison (§ 290.018) followed by a three-year parole period, which could be extended to a maximum of four years (§ 3000, subd. (b)(6)). After the court found defendant in violation of his parole, his maximum exposure remained exactly the same. In *Haymond*, the defendant's maximum exposure based on his original commitment offense was 10 years. Upon violating his parole and notwithstanding his original commitment term, the defendant in *Haymond* was subject to a mandatory additional term of five years, thus increasing his maximum exposure for the offense to 15 years. Section 3010.10 did not increase defendant's maximum commitment exposure.

Defendant's minimum exposure for his commitment offense also remained the same. For a defendant who was denied probation, as defendant was in this case, the maximum commitment period was 16 months in state prison. (§ 290.018, subd. (b).) The 16-month minimum commitment based on the commitment offense was not changed by the imposition of the six-month sentence for the parole violation.

The United States Supreme Court has previously held that "the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' (*Blakely* [*v. Washington* (2004)] 542 U.S. [296] at

15

p. 313), that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone (*Cunningham* [*v. California* (2007)] 549 U.S. [270] at p. [281])." (*People v. Black* (2007) 41 Cal.4th 799, 812.)  In California, the initial prison commitment, a period of parole, and a potential commitment based upon a parole violation for a specified period are part and parcel of the consequence of a defendant's conviction by a jury.  We are unaware of anything in California's parole scheme that exposes a defendant to a greater potential sentence than authorized by the jury's verdict.  Thus, defendant's parole revocation hearing and subsequent sentence were "entirely harmonious with the Fifth and Sixth Amendments."  (See *Haymond*, *supra*, 139 S.Ct. at sp. 2382.)

## IV.  DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

FIELDS
                                                                              J.

We concur:

MILLER
          Acting P. J.

RAPHAEL
          J.

16