Filed 8/18/22  P. v. Preciado CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ADDAE PRECIADO,<br><br>        Defendant and Appellant. | A162865<br><br>(Alameda County<br>Super. Ct. No. 19-CR-017348) |

We are in the midst of an unprecedented global pandemic, requiring trial courts to implement safety measures to mitigate the potential spread of the COVID-19 virus.  In this matter, as a precautionary measure, the trial court required everyone, including the witnesses, to wear masks.  Defendant contends the trial court's denial of his motion to require witnesses, as an alternative to opaque masks, to wear a clear face mask or a transparent face shield, violated his Sixth Amendment right to confrontation.  Defendant also contends he is entitled to resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).[1]  We conclude defendant's rights under the

---

[1] The parties cite Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) as having amended Penal Code section 1170 to add subdivision (b)(6).  As recently explained in *People v. Jones* (2022) 79 Cal.App.5th 37, however, "it is Senate Bill 567 that added subdivision (b)(6) to the statute."  (*Id.* at p. 44, fn. 11.)  The two bills (along

confrontation clause of the Sixth Amendment were not violated.  However, the matter shall be remanded for resentencing.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the facts of defendant's crimes, which are unnecessary to the resolution of this appeal.

Dianna D. and Robert P. lived in a homeless encampment near the bike trails between Berkeley and Richmond.  One night, Robert and Marvin B. were going to help Dianna with the completion of the platform for her tent.  While they were standing on the platform under some tarps talking, Marvin started smoking.  Because Dianna was asthmatic, at her request, Marvin stepped away.  Shortly thereafter, defendant shot Marvin in the abdomen with a bow and arrow and then struck him two times on the head and "maybe" three times on the shoulder.

In the meantime, after Marvin walked around the corner, Dianna heard a "weird" noise.  When Dianna went to check on Marvin, she discovered him face down on the ground.  He was unresponsive.  At this point, Dianna noticed that Robert was no longer behind her and heard him say he had been "hit" by "Panda," who Dianna identified as defendant.  Robert "pulled two arrows from himself."

Defendant admitted he shot Marvin B. and Robert P., but claimed he acted in self-defense.  Around Halloween, before the incident, according to

---

with a third) overlapped and were approved by the Governor on the same day.  "But because Senate Bill 567 was the last bill signed by the Governor and bears the highest chapter number, its amendments to section 1170 prevail over the amendments to that code section specified in the other two bills."  (*Jones,* at p. 44, fn. 11.)  We therefore refer to Senate Bill 567 in this opinion.

defendant, he had sex with Dianna, and Robert, armed with a machete, ordered him to leave. Several days later, defendant returned to Dianna's camp to return her bike light because he did not need it. He brought his bow and arrow for protection. When an unfamiliar man carrying a "foot-long object" began walking toward him, he thought it was Robert trying to hurt him. Defendant shot him with the bow and arrow. After realizing the man he shot was not Robert, defendant began to walk away; however, Robert approached him, holding what appeared to be a knife, and defendant shot him with an arrow.

The Alameda County District Attorney filed a first amended information charging defendant with two counts of attempted murder of Robert P. and Marvin B. (Pen. Code,[2] §§ 187, subd. (a), 664) and two counts of assault with a deadly weapon upon Robert P. and Marvin B. (§ 245, subd. (a)(1)). As to all counts, the information alleged an enhancement for infliction of great bodily injury (§ 12022.7, subd. (a)), and as to the attempted murder counts, alleged personal use of a deadly weapon (§ 12022, subd. (b)(1)).

A jury found defendant guilty of assault with a deadly weapon against Marvin B. and found true the allegation of great bodily injury. However, the jury acquitted defendant on both counts of attempted murder and assault with a deadly weapon against Robert P.

The court sentenced defendant to three years in state prison for assault with a deadly weapon and, under section 1385, stayed the three-year enhancement for great bodily injury.

---

[2] All statutory references are to the Penal Code.

3

## II.

## DISCUSSION

### A. *Defendant's Rights Under the Confrontation Clause Were Not Violated*

#### 1. *Relevant Proceedings*

Defendant's trial occurred during the COVID-19 pandemic, an unprecedented situation. His counsel filed a written in limine motion requesting that witnesses testify without wearing "a mask or face covering that conceals any part of their face while testifying." In the alternative, defense counsel proposed having a plexiglass partition separating the witness stand from the rest of the courtroom, or having witnesses wear a plastic face shield or a transparent mask. Counsel asserted that allowing a partial face covering would violate defendant's right to confrontation under the Sixth Amendment of the United States Constitution. Moreover, allowing a witness to testify while partially masked, defense counsel argued, would inhibit the jury's ability to assess a witness's credibility by observing demeanor or behavior.

The trial court denied the motion. The judge ruled that everyone in the courtroom, including himself, would be required to wear a mask. In rejecting defense counsel's proposal to use plexiglass to surround the witness or a clear plastic face shield, the court believed both provided inadequate protection because respiratory particles could "drop down in the seats," and there are "so many ways that you can't escape the little particles that you're referring to will come out."

#### 2. *Pertinent Law and Standard of Review*

" 'The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, [citation], provides that "[in] all criminal prosecutions, the accused shall enjoy the right . . . to be

4

confronted with the witnesses against him." . . . [I]t guarantees a defendant's right to confront those "who 'bear testimony' " against him.' " (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1281.) "The confrontation clause not only affords defendants the right to personally examine adverse witnesses, it also ' "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." [Citation.] [¶] The combined effect of these elements of confrontation . . . serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of the Anglo-American criminal proceedings.' " (*In re Ruedas* (2018) 23 Cal.App.5th 777, 786, quoting *Maryland v. Craig* (1990) 497 U.S. 836, 845–846 (*Craig*).)

In *Craig*, the court recognized "that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." (*Craig, supra*, 497 U.S. at p. 846.) The high court, nonetheless, also recognized that "[a]lthough face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,' [citation], we have nevertheless recognized that it is not the *sine qua non* of the confrontation right." (*Id.* at p. 847; accord, *People v. Wilson* (2021) 11 Cal.5th 259, 290.) Rather, " 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, [citation], a preference that 'must occasionally give way to considerations of public policy and the necessities of

5

the case.' " (*Craig*, at p. 849, italics added by *Craig*.) Though the "face-to-face confrontation requirement is not absolute," it cannot be "easily dispensed with," and may be denied only when "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." (*Id*. at p. 850.)

Here, because the facts are not disputed, we review the court's denial of defendant's motion de novo. (*People v. Wilson, supra,* 11 Cal.5th at p. 291; *People v. Bharth* (2021) 68 Cal.App.5th 801, 813.)

### 3. *Analysis*

Defendant contends the court violated his constitutional right to confront witnesses by requiring the witnesses to wear opaque face masks rather than clear masks or plastic face shields. We are unpersuaded defendant's Sixth Amendment right to confront witnesses was violated.

Three recent cases, *People v. Alvarez* (2022) 75 Cal.App.5th 28 (*Alvarez*), *People v. Lopez* (2022) 75 Cal.App.5th 227 (*Lopez*), and *People v. Edwards* (2022) 76 Cal.App.5th 523 (*Edwards*), have concluded that requiring witnesses to wear masks covering their nose and mouth during their testimony does not violate the confrontation clause because of the substantial risks created by the ongoing pandemic. Because there were no California published cases addressing whether the mask requirement violated the confrontation clause when *Alvarez* and *Lopez* were decided, both cases adopted and expanded upon the reasoning in numerous federal cases which concluded that due to the substantial public health risks created by the COVID-19 pandemic, having witnesses wear masks does not violate the confrontation clause. (*Alvarez*, at pp. 36–38 & fn. 7; *Lopez*, at pp. 232–233; see, e.g., *U.S. v. Maynard* (S.D.W.Va., Nov. 3, 2021, No. 2:21-cr-00065) 2021

6

U.S.Dist. Lexis 211943; *U.S. v. Crittenden* (M.D.Ga., Aug. 21, 2020, No. 4:20-CR-7 (CDL)) 2020 U.S.Dist. Lexis 151950.)

In *Alvarez*, the trial occurred during the COVID-19 pandemic. Prior to trial, defense counsel expressed his concern that allowing witnesses to wear masks while testifying to protect them from the spread of the virus would violate the defendant's constitutional right to confrontation. The judge who presided over this hearing responded that the witnesses "might be able to drop their masks below their mouths while testifying behind a plastic shield, which had been installed on the witness stand following the COVID-19 outbreak, and return the masks to cover the tip of their nose and mouths when not speaking." (*Alvarez, supra,* 75 Cal.App.5th at p. 34.) However, when a different judge presided over the trial, and defense counsel raised the same concern, requesting that witnesses testify without face masks, the judge required the witnesses to wear masks but allowed them to remove the masks " 'momentarily' " so they could be seen. (*Ibid.*)

The *Alvarez* court held a compelling public policy—the protection of the health and safety of the trial participants and members of the public who may attend the trial—justified the trial court's mask requirement. The court noted requiring individuals while testifying to wear masks covering their mouth and lower part of the nose during the pandemic "served an important state interest in protecting the public from a contagious, and too often, lethal disease." (*Alvarez, supra*, 75 Cal.App.5th at p. 36.) As to less restrictive alternatives, such as face shields and plexiglass screens, the court reasoned, " 'The CDC [(Centers for Disease Control and Prevention)] also makes a distinction between "masks" and "face shields," which is what the Government recommends here. The CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for

7

masks. [Citation.] Given the CDC recommendations, which are based on the best available science in this area,' " the court concluded the CDC's " 'social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial.' " (*Id.* at p. 37.) Ultimately, the court found "face shields and plexiglass screens are not an adequate substitute and standing alone do not provide reasonable protection for the trial participants." (*Ibid.*)

Finally, the court found all elements inherent in the confrontation clause, as set out in *Craig*, were satisfied. (*Alvarez, supra,* 75 Cal.App.5th at pp. 37–38.) The witnesses were physically in the courtroom in the presence of the defendant, under oath, and they were subject to "rigorous cross-examination." (*Id.* at p. 38.) Even though face masks covered their mouths and the lower part of their noses, the court observed "significant aspects of their appearance, including the eyes, tops of the cheeks, and the body, were readily observable as was posture, tone of voice, cadence and numerous other aspects of demeanor: 'Demeanor includes the language of the entire body [and] jurors will be able to observe most facets of the witnesses' demeanor.' " (*Ibid.*)

In sum, the *Alvarez* court concluded that as long as all procedural safeguards for ensuring reliability were present, "despite some minimal limitation on a jury's ability to assess witness demeanor," the confrontation clause was not violated. (*Alvarez, supra,* 75 Cal.App.5th at pp. 38–39.)

Likewise, in *Lopez*, the court held the mask requirement did not violate the defendant's right to confrontation. There, during pretrial proceedings, the defendant requested to be relieved of the requirement to wear a mask and that all witnesses be allowed to testify without masks. The trial court denied defendant's motion. (*Lopez, supra,* 75 Cal.App.5th at

8

p. 231.) Mirroring the same rationale as in *Alvarez*, *Lopez* upheld the trial court's decision requiring the defendant and witnesses to wear masks. (*Id.* at pp. 232–236.) Unlike *Alvarez*, however, the defendant in *Lopez* focused on a handful of orders from courts in other counties allowing witnesses during trial to testify maskless. The *Lopez* court determined the lack of adherence to identical procedures during the pandemic only "underscores the need for deference to a trial court's inherent authority and discretion to control the proceedings before it." (*Lopez*, at p. 235.) Accordingly, the court declined to adopt a rule infringing on the trial court's inherent authority to "promulgate procedures best suited for the particular courtrooms as they confront the challenges presented by the global pandemic." (*Id.* at p. 236.)

Shortly after the *Lopez* decision, the appellate court in *Edwards*, *supra*, 76 Cal.App.5th 523, in a succinct opinion, held the trial court properly denied the defendant's motion to bar witnesses from testifying through a mask. In upholding the trial court's ruling, *Edwards* reasoned: "The trial court in this case was not trying to hide or obscure identities or the truth. It was following national safety guidelines and court orders in response to a deadly and worldwide pandemic. This pandemic potentially affects everyone. This disease spreads through social contact. This pandemic has been long and unpredictable." (*Id.* p. 527.) Importantly, as discussed in more detail below, the appellate court also rejected the alterative use of clear masks or face shields.

Here, we agree with the reasoning of *Alvarez* and *Lopez*, and reject defendant's claims for the reasons expressed in both cases. In view of the ongoing and persistent COVID-19 pandemic, we believe the trial court's masking order was justified by the strong interest in safeguarding the health and safety of everyone in the courtroom. The masking order still allowed the

9

jury to assess the reliability and credibility of the witnesses by taking into consideration such factors as their demeanor, appearance, tone of their voice, recollection, and consistency and inconsistencies in their testimony, and accordingly, did not violate the confrontation clause.

Defendant argues the trial court instead could have ordered witnesses to wear clear masks or plastic face shields. However, citing to the CDC recommendations, *Alvarez* discounted the face shield or plexiglass screen alternatives because the CDC concluded face shields were not as effective as face masks and consequently did not recommend substituting face shields for face masks. (*Alvarez*, *supra,* 75 Cal.App.5th at p. 37.) The *Edwards* court also rejected proposed alternatives to face masks—clear masks or face shields—since the defendant "offered no evidence an objective authority appraised these alternatives to be effective in combatting the disease's spread." (*Edwards*, *supra*, 76 Cal.App.5th at p. 527.)

Here, too, defendant failed to provide the trial court with any objective authority suggesting clear masks or face shields were a safe alternative to opaque masks. The trial court, in August 2020, made its best assessment that masks were necessary "based on information known and prevalent at the time, months before COVID-19 vaccines were available and when public-health experts were still learning how to best prevent the spread of COVID-19." (*State v. Modtland* (Minn.Ct.App. 2022) 970 N.W.2d 711, 718.) In the absence of any evidence transparent masks or face shields were truly a viable alternative, and in view of the conclusion by many courts that face masks covering the nose and mouth do not violate the confrontation clause, the trial court's order did not violate the Constitution.

Lastly, defendant's reliance on *Romero v. State* (Tex.Crim.App. 2005) 173 S.W.3d 502 and *U.S. v. de Jesus-Castaneda* (9th Cir. 2013) 705 F.3d 1117

10

is misplaced because both cases concerned disguises, not face masks. Moreover, these cases were concerned with witness fear and safety rather than with a public health crisis, and in *de Jesus-Castaneda,* the Ninth Circuit concluded there was no violation of the confrontation clause. (*Romero*, at p. 506; *de Jesus-Castaneda*, at pp. 1120–1121.) Because the reasonableness of an impingement on the right of confrontation must be evaluated on a case-by-case basis, neither case has any bearing on the issue before us.

In sum, due to the ongoing safety and health threat posed by the COVID-19 virus, we conclude the trial court, acting in the best interests of the witnesses, jury, court personnel, and the public did not violate defendant's right of confrontation when it thoughtfully and intelligently required witnesses to wear opaque masks over their nose and mouth.

## B.     *Defendant Is Entitled To Resentencing Under Senate Bill 567*

Senate Bill 567 became effective January 1, 2022. (Stats. 2021, ch.731, §§ 1.3, 3(c).) Among other changes, Senate Bill 567 sets a presumption that the trial court "shall order imposition of the lower term if any of the [enumerated circumstances] was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6).) These circumstances include: "The person experienced psychological, physical, or childhood trauma, including, but not limited to abuse, neglect, exploitation, or sexual violence" and/or "The person is a youth, or was a youth, as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6)(A)–(B).) Section 1016.7, subdivision (b) defines " 'youth' " as "any person under 26 years of age on the date the offense was committed."

Defendant contends, the Attorney General concedes, and we agree that Senate Bill 567 applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal. (See *In re Estrada*

11

(1965) 63 Cal.2d 740, 745; *People v. Jones* (2022) 79 Cal.App.5th 37, 44; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [concluding Sen. Bill 567 retroactively applies to the defendant and remanding for resentencing].)

The trial court here imposed a three-year sentence, consisting of the middle term of three years with the punishment for the great bodily injury true finding dismissed (§ 1385, subd. (b)). The court continued the case several weeks for sentencing, and on May 17, 2021, executed the sentence and released defendant due to credit for time served.

Defendant contends he is entitled to the benefit of Senate Bill 567, and requests we remand the case for resentencing because he was 22 years old at the time of the incident underlying his assault with a deadly weapon conviction, and there was substantial evidence trauma played a role in causing his behavior. Each of these circumstances, defendant argues, triggers new section 1170, subdivision (b)(6)'s presumptive mandate to impose the lower term of two years. (§ 1170, subd. (b)(6)(A)–(B).) Defendant argues that if the trial court reduces his three-year sentence, his term of parole must be reduced by the amount of time his incarceration exceeded the duration of his proper sentence.

The Attorney General, on the other hand, maintains remand is unnecessary as defendant has served his three-year sentence. Relying on *People v. Delong* (2002) 101 Cal.App.4th 482, 487 and *People v. Zgurski* (2021) 73 Cal.App.5th 250, the Attorney General asserts defendant has not explained why a reduction in his sentence "after his release due to credit for time served would provide him any practical benefit." Regardless of the length of his sentence, the Attorney General argues, defendant "will have to be on parole for three years. (§ 3000, subd. (b)(2)(B) ['For a crime committed on or after July 1, 2013, at the expiration of a term of imprisonment of 1 year

12

and one day, or a term of imprisonment imposed pursuant to Section 1170 . . . , the inmate shall be released on parole for a period of 3 years . . .'].) . . . Nothing in [Senate Bill 567] reflects that the Legislature intended for the presumption of a lower term to also require a shorter term of parole." Accordingly, the Attorney General contends, defendant's "claim for resentencing is moot."

We are not persuaded. For reasons we will explain, we conclude remand for resentencing under Senate Bill 567 is not moot.

We do not agree with the Attorney General because "parole is a mandatory component of any prison sentence." (*People v. Nuckles* (2013) 56 Cal.4th 601, 609.) By statute, excess presentence custody credits apply to reduce any period of parole. (§§ 1170, subd. (a)(3) & 2900.5, subds. (a), (c); see also Cal. Code Regs., tit. 15, § 2345.) In addition, our case law recognizes that time served in excess of a determinate term must be credited against the prisoner's parole period. (*People v. Morales* (2016) 63 Cal.4th 399, 405 (*Morales*) [recognizing "long-established rule" that "excess presentence credits can reduce any period of parole"]; *In re Ballard* (1981) 115 Cal.App.3d 647, 649–650 (*Ballard*) [excess presentence custody and conduct credits apply to reduce a parole term]; cf. *In re Young* (2004) 32 Cal.4th 900, 909, fn. 5 [notwithstanding prisoner's release on parole, a sentence reduction for "heroic act" in prison under § 2935[3] "may still benefit petitioner by reducing his parole period"].)

---

[3] Section 2935 allows the Secretary of the Department of Corrections and Rehabilitation to "grant up to 12 additional months of reduction of the sentence to a prisoner, who has performed a heroic act in a life-threatening situation or who had provided exceptional assistance in maintaining the safety and security of a prison."

We recognize some recent cases have found excess credits do not reduce a parole term in a resentencing context; however, those cases were based on the express language of the statutes at issue. (See, e.g., *Morales*, *supra*, 63 Cal.4th at pp. 405, 406 [under Prop. 47, credit for time served does not reduce the parole period mandated by § 1170.18, subd. (d)]; *People v. Wilson* (2020) 53 Cal.App.5th 42, 49–50 [analogizing to *Morales* and finding § 1170.95, subd. (g) clearly precluded application of excess credits to parole term]).

Moreover, other cases have explained that absent specific language, generally applicable sentencing principles apply to resentencing. In *People v. Steward* (2018) 20 Cal.App.5th 407, 416–417, for example, the court held that because Proposition 47 was entirely silent as to whether excess custody credits under section 2900.5 (defendant is entitled to credit for time in custody from date of arrest) could reduce a term of postrelease community supervision (PRCS) imposed on a felony, generally applicable sentencing procedures governed. It then construed section 1170, subdivision (a)(3) (when presentence custody credits equal to or exceed the imposed sentence, the entire sentence is deemed to have been served) "to provide that excess custody credits apply to reduce a period of PRCS." (*Steward*, at p. 426; see also *People v. Pinon* (2016) 6 Cal.App.5th 956, 966–967 [excess custody credits reduced fines under § 2900.5].)

While the Attorney General stresses, pursuant to section 3000, subdivision (b)(2)(B), that regardless of the length of defendant's sentence, he will have to be on parole for three years, section 3000 says nothing about whether excess custody credits can apply to that parole term. It therefore appears that general sentencing procedures apply, and if on remand the trial court reduces defendant's sentence, he will be entitled to a reduction of his

14

parole term resulting from any excess credits pursuant to sections 1170, subdivision (a)(3) and 2900.5.  We express no opinion as to how the trial court should exercise its discretion on remand.

## III.

## DISPOSITION

This matter is remanded for resentencing in accordance with this opinion.  In all other respects, the judgment is affirmed.[4]


MARGULIES, J.


WE CONCUR:


HUMES, P. J.


WISS, J.*


A162865
*People v. Preciado*

---

[4] We deny the Attorney General's request that we take judicial notice of the Alameda County Superior Court's press release requiring all people entering its courthouses to wear masks.

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.