Filed 3/3/26  In re Renteria CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re | B337330 |
| LUIS RENTERIA, | (Los Angeles County Super. Ct. No. 1PH00766) |
| On Habeas Corpus. | |

ORIGINAL PROCEEDING on petition for writ of habeas corpus.  James D. Otto, Judge.  Petition denied.

Rich Pfeiffer, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Julie A. Malone, Viet Nguyen and Jennifer O. Cano, Deputy Attorneys General, for Respondent.

————————————

# INTRODUCTION

Luis Renteria was convicted of second degree murder and conspiracy to commit murder in 1990 and sentenced to a total prison term of 16 years to life. Renteria was paroled in 2019 but his parole was revoked for a parole violation in 2021. Renteria petitions for a writ of habeas corpus, raising two claims. First, he argues his reincarceration for what was charged as a simple battery violates the cruel and unusual punishment clauses of the federal and state constitutions. Second, he argues the Board of Parole Hearings (the Board) denied him due process by failing to consider youth offender and elderly parole factors at the initial hearing reconsidering his parole under Penal Code section 3000.1, subdivision (d), and California Code of Regulations, title 15, section 2275, subdivision (c).[1]

At oral argument, Renteria conceded both issues. Indeed, under existing law, Renteria's reincarceration is deemed a continuation of his sentence for his original offense, rather than a new sentence, and Renteria has not met the high burden of demonstrating the 32 years he has served on his life-maximum sentence is disproportionate to his second degree murder and conspiracy convictions. As to Renteria's due process claim, in light of his concession, we also conclude he is not entitled to relief on this claim. Accordingly, we deny the petition.

---

[1]     Undesignated statutory references (e.g., section 3000.1 or statutory section 3000.1) are to the Penal Code. Undesignated regulatory provisions (e.g., regulatory section 2275) are to Title 15 of the California Code of Regulations.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Offense, Conviction, and Sentence*

Renteria's cousin died in a gang shooting on August 27, 1988.[2]  The following day, Renteria joined some friends, including Augustine Rosas, to retaliate against the Harbor City gang they believed was responsible.  Renteria was reluctant to participate, but Rosas convinced him.  Renteria and Rosas drove to Harbor City in separate cars and spotted gang members in a parking lot with a white van they believed was involved in the shooting.  Renteria's group, including Rosas, fired shots from their vehicles, killing Andy Velasquez.  Renteria was 21 years old at the time of the crime.

On December 13, 1988, an information charged Renteria and Rosas with murder (§ 187).  The information specially alleged, as to Rosas, the personal discharge of a firearm from a vehicle causing great bodily injury or death (§ 12022.55) and, as to Renteria, that a principal to the crime was armed with a firearm (§ 12022, subd. (a)).

Rosas pleaded guilty to voluntary manslaughter, admitting the section 12022.55 firearm allegation.  After Rosas's plea, the People amended the information to charge Renteria with conspiracy to commit murder (§ 182, subd. (1)) and second degree murder (§ 187, subd. (a)), with the special allegation that a principal was armed with a firearm.  The amended information alleged three overt acts as part of the conspiracy:  (1) Renteria

---

[2]    We provide the underlying facts and procedural history from this court's unpublished opinion affirming the denial of Renteria's section 1172.6 petition (formerly section 1170.95). (See *People v. Renteria* (Sept. 20, 2021), B304530 [nonpub. opn.].)

himself was armed; (2) Renteria drove to Harbor City; and (3) Renteria or a coconspirator shot and killed Velasquez.

Renteria proceeded to trial on the amended information. In 1990, a jury convicted Renteria on both charges. The jury found true that a principal was armed with a firearm during the offense, but found not true the overt act allegation that Renteria himself was armed.

The trial court sentenced Renteria to a total prison term of 16 years to life.

B.     *Parole and Revocation*

After he had served approximately 29 years of his sentence, the Board paroled Renteria on November 22, 2019.

In February 2021, Renteria was living at a transitional living facility in Los Angeles. On February 1, 2021, police responded to a report that Renteria had "touched" a developmentally disabled woman, Yennifer D., who lived next door to the transitional living facility in the care of family members. Renteria was arrested and charged with sexual battery, later reduced to simple battery. The District Attorney ultimately declined to prosecute because Yennifer was "nonverbal and couldn't adequately testify."

On February 8, 2021, the California Department of Corrections and Rehabilitation (CDCR) petitioned to revoke Renteria's parole. Consistent with the criminal charges, the petition initially alleged Renteria committed a sexual battery on Yennifer, but this allegation was amended to simple battery.

The superior court held a parole revocation hearing on November 29, 2021, where it heard testimony from Yennifer's sister-in-law, Silvia Bello Odeja (Bello); Yennifer's mother,

4

Manuela Garza; and responding Los Angeles police officer Christina Oka. The court also viewed a body camera video of Yennifer's interview with police.

Bello testified that Yennifer was sitting outside in the yard when Bello saw Renteria touching Yennifer's hair and shoulder through the fence. When Bello called Yennifer to come inside, Renteria "grabbed her shoulder and said, 'Don't leave, don't go.'" Yennifer moved her shoulder away from Renteria. Garza testified that Yennifer had the mental capacity of a four-year-old child, and that after the incident she appeared frightened and started sleeping a lot and wetting herself.

The superior court revoked Renteria's parole and remanded him to CDCR custody, finding that Renteria had committed a simple battery on Yennifer and thus violated the conditions of his parole. This court affirmed the parole revocation order on appeal. (*People v. Renteria* (May 17, 2023), B316446 [nonpub. opn.].) The California Supreme Court denied Renteria's petition for review on July 26, 2023.

C.     *The Initial Parole Reconsideration Hearing*

On September 28, 2022, the Board conducted an initial parole reconsideration hearing to determine whether Renteria should be paroled or remain in custody. Renteria appeared at the hearing, represented by counsel.

Renteria testified he never touched Yennifer and that her family "fabricate[d] the story" because he complained to them about loud music and threatened to report the presence of undocumented immigrants in their home. The Board noted Renteria's parole officer reported Renteria refused housing programming, failed to attend support meetings regularly, and

5

was unable to maintain residence with family members because he "failed to follow [their] house rules." Renteria was also removed from a reentry housing program for having sex with his fiancée in a public area. When the Board raised concerns about Renteria's unemployment during the parole term, Renteria explained that he was unemployed because he was awaiting approval of disability benefits. Renteria testified that he used a walker and a wheelchair due to back pain and it was "very difficult to try to get any job" in his condition.

After deliberation, the Board denied Renteria parole, determining that "the circumstances and the gravity of the violation," in the context of Renteria's underlying conviction and "all relevant suitability factors[,] are such that consideration of public safety requires a more lengthy period of incarceration." The Board concluded Renteria had "poor[]" overall performance on parole and "a developing pattern" of "inappropriate[]" behavior. The Board stated Renteria "did not use [his] coping skills or his support system" and "it doesn't seem that he had complete control over his emotions when he was in the community." Further, the Board noted Renteria "indicates that everyone has lied[:] the victim, the witness, the Parole Agent." Finally, the Board's presiding commissioner remarked, "The gravity of this offense may seem minor to you. . . . [I]t's not minor. . . . [T]he incident was a threat to somebody that was not able to take full care of themselves, and we find it to be . . . a serious offense." The Board did not consider elderly parole or youth offender parole factors.

D.    *Habeas Corpus Petition and Subsequent Parole*
       *Reconsideration Proceedings*

On July 27, 2023, Renteria filed a petition for a writ of habeas corpus in the superior court.  Renteria alleged the Board's decision lacked an evidentiary basis, that the Board failed to consider youth offender and elderly parole suitability, and that "his placement in custody has become constitutionally excessive."

After Renteria filed his petition, the Board held an annual parole reconsideration hearing on January 10, 2024, which Renteria and his counsel attended.  The Board discussed Renteria's behavior in prison, including a recent fight with another inmate in self-defense, an incident of fentanyl use in June 2023, and a disciplinary write-up for possessing cell-phone-related contraband.  Renteria's most recent risk assessment, from October 2023, indicated "a moderate [risk for violence] on the higher end of th[e] continuum."

After deliberation, the Board denied Renteria parole.  It based the denial on Renteria's "recent behavioral instability," "limited coping tools," and "lack of self-awareness as to his past criminal behavior."  The Board stated it "gave special consideration to [Renteria's] elderly offender factors" because Renteria was 56 years old.  And although the Board "did not see any evidence of [Renteria's] qualification as a youth [of]fender," the Board afforded "great weight to his youth [of]fender factors" out of "caution."

The trial court denied Renteria's habeas petition on March 19, 2024.  The court found "some evidence" supporting the Board's denial of parole and held the Board was not required to consider youth offender and elderly parole suitability factors at an initial parole reconsideration hearing.  The court also held

7

Renteria's continued incarceration did not constitute cruel and unusual punishment, because he "planned and carried out a murder under the belief that he was exacting revenge" and equally culpable defendants had received similar sentences.

On May 6, 2024, Renteria filed a habeas petition in this court, alleging the same three claims he presented to the trial court. We denied the petition.

Renteria petitioned for review in the California Supreme Court. The Supreme Court granted review and directed this court to vacate its denial and issue an order to show cause "why relief should not be granted on the grounds petitioner's reincarceration for his 2021 parole violation amounts to cruel and unusual punishment under the state and federal Constitutions and that the Board of Parole Hearings erred by failing to consider youth offender and elderly parole suitability factors at petitioner's initial parole reconsideration hearing."

We ordered the People to show cause, and appointed counsel for Renteria. The People filed a return, and Renteria, through counsel, filed a traverse. We also asked the parties to file supplemental briefing as further noted in the Discussion below.

## DISCUSSION

A. *Renteria's Burden on His Habeas Petition*

When a superior court denies a petition for writ of habeas corpus in a noncapital case, the petitioner may not appeal and "must file a new, original [habeas] petition, generally in the Court of Appeal." (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 895; see Cal. Const. art. 6, § 10 [original habeas jurisdiction also

vested in courts of appeal].)  The issuance of an order to show cause signifies a preliminary determination that the petitioner has sufficiently alleged a prima facie case, but " '[this] determination, it must be emphasized, is truly "preliminary":  it is only initial and tentative, and not final and binding.' " (*In re Large* (2007) 41 Cal.4th 538, 549; see *In re Serrano* (1995) 10 Cal.4th 447, 454-455.)  Ultimately, " ' "[a] habeas corpus petitioner bears the burden of establishing that the judgment under which he or she is restrained is invalid.  [Citation.]  To do so, he or she must prove, by a preponderance of the evidence, facts that establish a basis for relief on habeas corpus." ' " (*In re Lucas* (2004) 33 Cal.4th 682, 694; accord, *In re Cox* (2003) 30 Cal.4th 974, 997-998.)  This burden is "heavy," because " '[f]or purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence.' " (*People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*).)

B.      *Renteria Has Not Demonstrated His Sentence or Reincarceration Are Constitutionally Excessive*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."  (U.S. Const., 8th Amend.)  A sentence violates the Eighth Amendment when the sentence is " ' "grossly disproportionate" ' " to the offense. (*Ewing v. California* (2003) 538 U.S. 11, 23; accord, *In re Coley* (2012) 55 Cal.4th 524, 558-559.)  The California Constitution similarly provides that "[c]ruel or unusual punishment may not be inflicted."  (Cal. Const., art. I, § 17.)  Under our state constitution, a punishment is unconstitutional if " 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human

9

dignity.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478; accord, *In re Palmer* (2021) 10 Cal.5th 959, 972 (*Palmer*).)  Renteria focuses his arguments on the state constitutional provision and does not "contend that the federal Constitution offers him any additional protection beyond that afforded by the state Constitution," so "no separate analysis of his federal claim is necessary." (*Palmer*, at p. 968, fn. 2 [analyzing petitioner's claims "exclusively under the California Constitution"].)

An indeterminate life prisoner who has been denied parole may bring a claim under the California Constitution alleging that, given the "particular circumstances" of his crime, his confinement has "become constitutionally excessive." (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1098 (*Dannenberg*); see *Palmer, supra,* 10 Cal.5th at p. 968.)  A reviewing court, however, must bear in mind "the Legislature's broad discretion over the types and limits of punishment," including its choice of "an indeterminate term where the Board has authority to order release." (*Palmer*, at p. 971.)  For this reason, "[a] claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should give ' "the broadest discretion possible" ' [citation] to the legislative judgment respecting appropriate punishment." (*Id.* at p. 972.)  " ' "[O]nly in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." ' " (*People v. Reyes* (2016) 246 Cal.App.4th 62, 86; accord, *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093; see *Lockyer v. Andrade* (2003) 538 U.S. 63, 73 [gross disproportionality "applicable only in the 'exceedingly rare' and 'extreme' case"]; *Dannenberg, supra*, 34 Cal.4th at p. 1071 [life-maximum

imprisonment for "serious offenses" is "rarely" constitutionally disproportionate].)

Three considerations guide our review of excessive sentence claims: "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer, supra*, 10 Cal.5th at p. 973, citing *In re Lynch* (1972) 8 Cal.3d 410, 425-428.)

In his petition, Renteria challenges both his preparole incarceration ("the 30-years he served for second-degree murder") and his reincarceration ("Renteria has served another one and a half years in prison for a simple battery"), arguing they are grossly disproportionate to his offense. He contends first that he was less culpable in the underlying murder: he did not carry a firearm and was not the actual killer; he was pressured by Rosas into going to the shooting; he was 21 years old at the time; and his prior criminal history was minor. By contrast, Renteria observes, Rosas pleaded guilty to manslaughter, received a sentence of 13 years, and was released after six and a half years. Based on Rosas's plea, Renteria contends his crime "was actually a manslaughter" and his sentence exceeds the sentences that other jurisdictions impose for manslaughter. And as to his reincarceration, he argues "other non-lifers on parole get a 'flash incarceration' of 1-10-days or a maximum of 180-days. [Citations.] That means a non-lifer on a parole violation for simple battery are released between 1-180-days with no public

11

safety requirement but lifers on a parole violation for simple battery are treated differently."[3]

As stated, Renteria conceded there was no constitutional violation at oral argument. And in his briefing, Renteria did not establish that the time he served preparole or the total time he served after he was reincarcerated for a parole violation is constitutionally disproportionate. We first consider the nature of Renteria's underlying offense of second degree murder and conspiracy to commit murder and his 16 years to life sentence. (See *Palmer*, *supra*, 10 Cal.5th at p. 973.) Even if Renteria's codefendant may have been more culpable, Renteria's participation in a fatal, gang-related, drive-by shooting was undoubtedly serious. (See *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1391 (*Rhodes*) [mitigating factors were outweighed by seriousness of the second degree murder offense such that life without parole was not constitutionally excessive]; *People v. Gonzales* (2001) 87 Cal.App.4th 1, 17 [same, for sentence of 50 years to life, despite defendant's "youth and incidental criminal history"], overruled on another ground by *People v. Chiu* (2014) 59 Cal.4th 155, as stated in *In re Johnson* (2016) 246 Cal.App.4th 1396, 1406; *People v. Mora* (1995) 39 Cal.App.4th 607, 617–618 [life without parole sentence not constitutionally excessive for murder even though defendant was not "actual shooter"]; *People v. Eshelman* (1990) 225 Cal.App.3d 1513, 1524 ["Murder, even without the use of a firearm, is a serious felony."].)

---

[3]     The California Supreme Court's order did not grant review or direct us to issue an order to show cause based on Renteria's equal protection claim.

12

The California Supreme Court has cautioned that constitutional disproportionality "will rarely apply to those serious offenses and offenders currently subject by statute to life-maximum imprisonment." (*Dannenberg*, *supra*, 34 Cal.4th at p. 1071; see *People v. Em* (2009) 171 Cal.App.4th 964, 972-973 ["Life sentences pass constitutional muster for those convicted of aiding and abetting murder, and for those guilty of felony murder who did not intend to kill."].) Indeed, by convicting Renteria of conspiracy to commit murder, the jury found that Renteria had the intent to kill. (See *People v. Swain* (1996) 12 Cal.4th 593, 607 ["a conviction of conspiracy to commit murder requires a finding of intent to kill"].)

Renteria's petition also argued his sentence is greater than the sentences authorized in California for "more serious" or more "dangerous[]" crimes, including assault, poisoning, and rape. (See *Palmer*, *supra*, 10 Cal.5th at p. 973.) While these crimes are also undoubtedly serious, "[t]here is a line 'between homicide and other serious violent offenses against the individual.' " (*Graham v. Florida* (2010) 560 U.S. 48, 69 [nonhomicide crimes " 'cannot be compared to murder in their "severity and irrevocability" ' " for Eighth Amendment purposes]; accord, *People v. Williams* (2024) 17 Cal.5th 99, 132.)

The lesser sentence served by Rosas does not establish that Renteria's own sentence is constitutionally excessive. (See *People v. Mincey* (1992) 2 Cal.4th 408, 476 ["disparity in sentencing imposed on defendant and [codefendant] does not establish that defendant's sentence is grossly disproportionate to the offense he committed"]; accord, *People v. Ramos* (1997) 15 Cal.4th 1133, 1181-1182 [rejecting claim of disproportionate sentence where defendant argued that codefendant was "morally

13

more culpable" and received a lesser sentence].) "This is particularly true where the disposition of the codefendant's case was based on plea negotiations," as was Rosas's sentence. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1159; accord, *People v. Wilson* (2020) 56 Cal.App.5th 128, 169-170 (*Wilson*).) Rosas's plea to manslaughter also does not demonstrate that Renteria's sentence should be compared to the sentence for manslaughter in California or in other jurisdictions (see *Palmer, supra,* 10 Cal.5th at p. 973), because Renteria was convicted of second degree murder. (See *People v. Norman* (2003) 109 Cal.App.4th 221, 229-230 [rejecting excessiveness comparison to voluntary manslaughter because jury convicted defendant of second degree murder].) Accordingly, Renteria has not demonstrated the 29 years he served before he was paroled was constitutionally excessive.

We next consider Renteria's contention his reincarceration after his parole revocation for simple battery was itself constitutionally excessive. (See *Palmer, supra,* 10 Cal.5th at p. 970 ["life-top inmates denied release on parole may bring their constitutional challenges directly to court. . . . inmates . . . are not limited to challenging only the statutory life maximum" and may "challenge their continued incarceration" including "their years served under" the indeterminate and determinate sentencing laws].) In his petition, Renteria cites Justice Liu's concurring opinion in *Palmer, supra,* 10 Cal.5th at pages 980 to 982. In *Palmer,* after the appellate court determined the defendant had served a constitutionally excessive prison sentence, the California Supreme Court held that a finding of excessiveness did not automatically require termination of the defendant's remaining parole term. (*Id.* at p. 980.) While the *Palmer* majority declined

14

to address the consequences of any future parole violations (see *id.* at p. 978), Justice Liu separately expressed his view that if a defendant has already served a constitutionally excessive prison term, that defendant "may not be reincarcerated for violating parole" (*id.* at p. 981 (conc. opn. of Liu, J.)).  On this basis, Renteria argued in his petition that he could not be constitutionally reincarcerated for his parole violation.  But Renteria, unlike the defendant in *Palmer*, has not demonstrated the 29-year sentence he served for second degree murder and conspiracy to commit murder is constitutionally excessive such that his reincarceration for a parole violation would violate the state constitution.  (See *id.* at p. 974 [declining to review the Court of Appeal's determination that Palmer's punishment was disproportionate].)

Although we appointed counsel to represent Renteria and counsel filed a traverse, Renteria does not meaningfully respond to the People's arguments that he has not served a constitutionally excessive sentence.[4]  And he conceded the issue

_____

[4]     Renteria instead raises several new and primarily statutory arguments in the traverse:  (1) at his initial parole reconsideration hearing, the Board failed to consider intermediate sanctions short of continued incarceration; (2) that he is no longer subject to an indeterminate life term after the passage of Senate Bill No. 118 in 2020, which capped the parole term for life prisoners paroled after July 1, 2020, to three years; and (3) that, although he was paroled before this date, the changes made by Senate Bill No. 118 apply to him as a matter of equal protection.  We do not reach these additional claims because they were not raised in Renteria's petition and they exceed the scope of our order to show cause.  "'[A]ttempts to introduce additional claims . . . in a traverse do not expand the

15

at oral argument. Renteria argued in supplemental briefing that he "faces a potential new life sentence" because of his simple battery parole violation, and "[t]his disproportionate penalty is cruel and unusual punishment." There are several problems with this argument.

First, it fails to acknowledge Renteria is serving a life-maximum sentence for second degree murder and conspiracy to commit murder, rather than for simple battery. As Justice Liu's concurrence in *Palmer, supra,* 10 Cal.5th at page 971 explained, reincarceration after a parole violation is "a resumption of precisely the same imprisonment" for the underlying crime. (See *People v. Nuckles* (2013) 56 Cal.4th 601, 609 [parole "is a form of punishment accruing directly from the underlying conviction" and "is a direct consequence of a felony conviction and prison term"; if a parolee violates a parole condition, the state may " 'return the individual to imprisonment without the burden of a new adversary criminal trial' "].) This means Renteria's reincarceration is a resumption of his original sentence, rather than a new sentence for his parole violation. And Renteria conceded at oral argument that the analysis of "the cruel and unusual punishment goes to the original sentence."

---

scope of the proceeding[,] which is limited to the claims which the court initially determined stated a prima facie case for relief.'" (*Duvall, supra*, 9 Cal.4th at p. 478; accord, *In re Lawley* (2008) 42 Cal.4th 1231, 1248; *In re Lugo* (2008) 164 Cal.App.4th 1522, 1542; *Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1235 ["[A] habeas corpus petitioner may not raise additional issues in the traverse."].) Renteria may choose to present these claims in a future habeas petition.

Second, Renteria does not cite any authority that parole revocation and reincarceration pursuant to a lawful life-maximum sentence itself constitutes cruel and unusual punishment. "'We are not required to examine undeveloped claims or to supply arguments for the litigants.'" (*People v. Baugh* (2024) 107 Cal.App.5th 739, 750; accord, *People v. Abarca* (2016) 2 Cal.App.5th 475, 480; see also *Duvall*, *supra*, 9 Cal.4th at p. 474 ["the burden is on the [habeas] petitioner to establish grounds for his release"].) Indeed, courts have rejected similar claims in the past. (Cf. *In re Johnson* (1995) 35 Cal.App.4th 160, 173 [rejecting argument that "reimprisonment after 13 months of [parole] release constitutes cruel or unusual punishment" and noting "Johnson readily concedes that he can find no case supporting his claim"].)

Third, to the extent Renteria challenges his total sentence served (29 years plus reincarceration), as Renteria concedes, our disproportionality analysis is with reference to his underlying crime rather than the parole violation leading to reincarceration. And the approximately 32 years Renteria had served at the time he filed his petition is not grossly disproportionate to his involvement in the underlying murder of Velasquez, which resulted in a conviction for second degree murder and conspiracy to commit murder, for the same reasons explained above. Further, although not dispositive, the Board deemed Renteria's simple battery parole violation to be a "serious offense," because it "threat[ened] somebody that was not able to take full care of themselves," and Renteria did not accept responsibility for the incident. These additional circumstances support the Board's finding that Renteria's conduct was a threat to society and that Renteria's reincarceration is not grossly disproportionate to his

17

offense. (Cf. *People v. Romero* (2002) 99 Cal.App.4th 1418, 1432 [recidivist behavior, including parole violations, supported proportionality of 25-years-to-life sentence]; accord, *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366-367; *People v. Cooper* (1996) 43 Cal.App.4th 815, 825-826.)

For all these reasons, Renteria has not met his burden to demonstrate his sentence or reincarceration were constitutionally excessive. (See *Rhodes*, *supra*, 126 Cal.App.4th at p. 1391 [denying claim because "defendant has made no showing that the challenged penalty is far in excess of that imposed in California for [more] serious crimes or for the same offense in other jurisdictions"]; accord, *Wilson*, *supra*, 56 Cal.App.5th at p. 170.)

C.      *Renteria Concedes the Parole Board Was Not Required To Consider Youth Offender or Elderly Parole Suitability at the Initial Parole Reconsideration Hearing*

We now examine Renteria's due process claim that elderly and youth offender parole considerations apply to a parole reconsideration initial hearing. Although Renteria raised this claim in his original habeas corpus petition, Renteria subsequently abandoned it in his traverse. At oral argument, Renteria expressly conceded that the youth offender and elderly parole factors do not apply to an initial parole reconsideration hearing. As Renteria has abandoned and conceded the issue, we conclude Renteria has not met his burden to demonstrate entitlement to relief. (*Duvall*, *supra*, 9 Cal.4th at p. 474 [habeas corpus petitioner bears "heavy burden" to prove grounds for relief]; *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, [a party] must present meaningful legal analysis"].)

18

## DISPOSITION

The petition for a writ of habeas corpus is denied.

                                                     MARTINEZ, P. J.

We concur:

SEGAL, J.                                STONE, J.